Original
No. 7446

### JOYCE Y. SLAYTON

v.

### PERSONNEL COMMISSION
### OF THE STATE OF NEW HAMPSHIRE

March 31, 1977

*Cleveland, Waters & Bass,* of Concord, *Robert T. Clark,* and *Howard J. Zibel* (*Mr. Zibel* orally) for the plaintiff.

*David H. Souter,* attorney general, and *David W. Marshall,* attorney (*Mr. Marshall* orally) for the defendant.

KENISON, C.J. This is a petition for a writ of certiorari, RSA 490:4 (Supp. 1975), by which the plaintiff seeks review of a decision by the personnel commission. The commission sustained the director of personnel's refusal to eliminate certain discrepancies in the salaries paid to remedial teachers at the Laconia State School.

The plaintiff alleges that such discrepancies in pay violate the "equal pay for equal work" mandate of RSA 98:13 XIII and the equal protection clauses of the state and federal constitutions.

On September 1, 1961, and pursuant to RSA 98:13 XIII, the director of personnel established and classified the position of "Remedial Teacher at the Laconia State School," and assigned that position to Labor Grade 14. In order to keep state teaching positions competitive with those in the private sector, the director decided to conform to the private employers' practice of paying teachers a full year salary for working an academic year. When the plaintiff began teaching at the Laconia State School in September 1971, she worked the traditional academic year schedule of nine months (180 working days). In September 1972, she and a few other remedial teachers began to work a full twelve-month year consisting of 235 working days. Other teachers continued to work the normal academic year.

The director did not reclassify the plaintiff's position because her daily teaching duties remained the same. However, to compensate for the additional days' work, the director raised the plaintiff's salary to $11,764 which was $14/12$ths of her academic year salary of $10,083. This increase was based upon the erroneous assumption that the academic year was ten months long and that the plaintiff would therefore be working an additional two months or $2/12$ths of a year. In reality, however, the academic year was only nine months long. Thus, as a full year teacher, the plaintiff had to work an additional three months per year for only an additional two months' salary. In dollars and cents this disparity meant that, depending upon what rank a teacher held within Labor Grade 14, the full year teachers received either $4.89 or $5.69 less per day than their academic year counterparts. On a yearly basis the full year teachers earned $1,150 to $1,400 less than what they would have made if their daily rates of pay equaled those of the academic year teachers.

The plaintiff brought this discrepancy to the attention of the director. He recognized "the basic philosophy of 'equal pay for equal work' among classified state employees" and further agreed that the per diem pay of the full year teachers was less than that of the academic year teachers. He could have eliminated this disparity by paying the plaintiff an extra month of salary to reflect the fact that, as a full year teacher, she worked three, not two, months more than the academic year teachers. However, he chose

not to do so. Under his analysis, academic year teachers were being overpaid because they received twelve months' salary for nine months' work when their annual wages were originally determined on the assumption that they worked ten months per year. He was understandably reluctant to order the present academic year teachers to pay back the money which he felt they did not deserve to earn over the years. He was equally hesitant to reduce their salaries prospectively because, as he stated, they were overpaid through no fault of their own, and he did not want any present employee to suffer a pay loss. Nevertheless, he refused to pay the full year teachers fifteen months' salary for twelve months' work because he felt that such action would only perpetuate the error of paying academic year teachers twelve months' salary for nine months' work. His solution to the whole problem was to do nothing except pay newly hired academic year teachers a lower wage to reflect the fact that they would work only nine months per year. The impact of this rather complicated situation is that the director was willing to perpetuate the error with respect to presently employed academic year teachers but not with respect to presently employed full year teachers or newly hired academic year teachers.

In determining whether to grant a writ of certiorari our task is to decide whether the administrative agency has acted illegally in respect to jurisdiction, authority or observance of the law, *N.H.-Vt. Physician Serv. v. Durkin*, 113 N.H. 717, 313 A.2d 416 (1973); or has abused its discretion or acted arbitrarily, unreasonably or capriciously. *Winn v. Jordan*, 101 N.H. 65, 133 A.2d 485 (1957). RSA 98:13 XIII states that the director of personnel is "[t]o be responsible for the preparation, maintenance and revision of a position classification plan for all positions in the classified service, based upon similarity of duties performed and responsibilities assumed, so that the same qualifications may reasonably be required for, and the same schedule of pay may be equitably applied to, all positions in the same classification." In *Proulx v. Personnel Commission*, 116 N.H. 311, 358 A.2d 871 (1976), we noted that the rules of the department of personnel require the director to establish and maintain "a uniform plan of classification and pay based upon the relative duties and responsibilities of positions in the state classified service." *Id.* at 313, 358 A.2d at 873. (Emphasis deleted.) That case involved a certain department rule that determined how the director would compute pay raises for employees

whose positions were reallocated or reevaluated upward. The operation of the rule caused disparities in pay among employees similarly situated. We held that such discrepancies violated "the statutory directive both express and implied in RSA ch. 98; *i.e.*, that uniform pay schedules be equitably applied to all employees within the same classification." *Id.* at 358 A.2d at 872.

The defendant does not dispute the applicability of the equal pay for equal work principle. The question is whether paying some teachers $56 per day for doing work identical to that done by other equally qualified teachers who are paid only $50 per day constitutes equal pay for equal work. Clearly it does not. Fixing the plaintiff's salary at a reduced per diem rate violated RSA 98:13 XIII. Because of this holding, we need not reach the constitutional question. Due to the schedule change, the plaintiff was mistakenly underpaid for her work and should be compensated accordingly from the date she brought it to the attention of the director in 1974. RSA 99:4 (Supp. 1975).

*So ordered.*

All concurred.