Grafton
No. 80-203

### PAUL D. SLATER, TRUSTEE OF THE STINSON TRUST

### v.

### PLANNING BOARD OF THE TOWN OF RUMNEY

March 16, 1981

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester (*John A. Graf* on the brief and orally), for the plaintiff.

*Nighswander, Lord, Martin & KillKelley*, of Laconia (*Willard G. Martin, Jr.*, on the brief and orally), for the defendant.

BOIS, J.   The principal issue presented in this case is whether the master used the proper standard in reviewing the decision of the planning board, which the plaintiff had appealed to the superior court pursuant to RSA 36:34 (Supp. 1975) (amended 1979). We are also asked to decide whether the master erred in finding that the evidence before the planning board was insufficient for the board to deny the subdivision application of the plaintiff. We affirm, holding that the Master (*Charles F. Leahy*, Esq.) applied the correct standard of review and that he did not err in finding insufficient evidence to support the decision of the planning board.

This case arises out of a petition to the superior court for certiorari pursuant to RSA 36:34 (Supp. 1975) by the plaintiff, Paul D. Slater, as Trustee of the Stinson Trust, seeking review of a decision of the defendant, the planning board of the Town of Rumney. The plaintiff claims that the April 26, 1977, decision of the board, which denied final subdivision approval of a proposed one-hundred-unit condominium project on Stinson Lake, was illegal and was made in bad faith or maliciously.

After a hearing, the master, in a report dated December 4, 1978, found that the board did not act in bad faith or with malice. Nevertheless, he recommended that the board's decision to deny approval of subdivision of the property be reversed and that the project be approved. The Superior Court (*Johnson,* J.) approved the master's report, and the defendant appealed.

At the time of the decision, RSA 36:34 (Supp. 1975) was the applicable statute and provided in part:

> "I. Any persons aggrieved by any decision of the planning board concerning a plat or subdivision or building permit may present to the superior court a petition, duly verified,

setting forth that such decision is illegal in whole or in part, specifying the grounds of the illegality. . . .

V. The court may reverse or affirm, wholly or partly, or may modify the decision brought up for review."

In ruling on the proper standard of review to be applied, the master stated:

"[T]he additional power granted by RSA 36:34 to take testimony, to make findings of fact and conclusions of law, and to incorporate such testimony and findings into the Court's own determination, together with the fact that the Court 'may reverse or affirm, wholly or partly, or may modify the decision brought up for review,' provides the reviewing Court with authority broader than that described by *Slayton* [*v. Personnel Comm'n*, 117 N.H. 206, 371 A.2d 1159 (1977),] in a certiorari proceeding under RSA 490:4.

In a proceeding under RSA 36:34, the Superior Court exercises the same powers as those exercised by the Superior Court in appeals pursuant to RSA 31:77–87. While RSA 36:34 is stated in abbreviated form, each essential element of the appeal process spelled out in RSA 31:77–87 appears in RSA 36:34. That being so, the proper standard of review of a Planning Board decision is that the Superior Court 'has the power to overturn the board's determination when . . . [it] is persuaded by a balance of probabilities, on the evidence before the court, that the order or decision is unjust or unreasonable. The burden is on the appellant to convince the court that the order is either unjust or unreasonable.' *Cook v. Town of Sanbornton* (N.H. Sup. Ct., 10/4/78); *Slayton v. Personnel Commission*, 117 N.H. 206, 208 (1977); *Barker v. Young*, 80 N.H. 447, 448 (1922)."

The defendant argues that the master erred in applying the balance of probabilities standard of review to the decision of the planning board. He claims that the master improperly relied on *Cook v. Town of Sanbornton*, 118 N.H. 668, 392 A.2d 1201 (1978), which we decided after the trial but prior to the master's decision in the instant case. In *Cook* we discussed the appropriate standard of review in appeals from *zoning board* decisions pursuant to RSA 31:77 (1970) (current version at Supp. 1979). We held that RSA 31:78 (1970) (current version at Supp. 1979)

"does not impose an absolute requirement that the [zoning] board's decision be erroneous as a matter of law before a trial judge can change it; the court need only inquire whether there is such error when it is not 'persuaded by the balance of the probabilities, on the evidence before it, that said order or decision is unjust or unreasonable.' "

118 N.H. at 670, 392 A.2d at 1202. Regarding *Cook* being retroactive, *see Shaw v. City of Manchester*, 120 N.H. 529, 531, 419 A.2d 394, 395 (1980), and *Carey v. Town of Westmoreland*, 120 N.H. 374, 375, 415 A.2d 333, 334 (1980). The defendant concludes that the master's reliance on *Cook* resulted in his reading too broad a standard of review into RSA 36:34 (Supp. 1975) by failing to restrict himself to an inquiry whether the planning board acted reasonably as a matter of law.

In 1979, the legislature amended RSA 36:34 to provide that the superior court may reverse or affirm, in whole or in part, or modify a planning board decision "when there is an error of law or when the court is persuaded by the balance of probabilities, on the evidence before it, that said decision is unreasonable." RSA 36:34 V (1979). The standard of review set forth in this statute, however, was not the standard set forth in RSA 36:34 (Supp. 1975) in effect in December of 1978.

The defendant argues that the standard of review is set forth in *N.H.-Vt. Physician Serv. v. Durkin*, 113 N.H. 717, 720–21, 313 A.2d 416, 419 (1973), and in *Slayton v. Personnel Comm'n*, 117 N.H. 206, 208, 371 A.2d 1159, 1161 (1977). In *N.H.-Vt. Physicians Serv. supra* we held that "[t]he scope of judicial review under a writ of certiorari, . . . is restricted to a determination of whether an administrative body has acted illegally in respect to jurisdiction, authority or observance of law. Certiorari is not available to review issues of fact, except in regard to the question of law as to whether an agency's findings could have been reasonably made." (Citations omitted.)

The master's report discloses that on five occasions he found that reasonable men could not conclude that the subdivision approval should be denied based on the evidence presented to the board and the court. In each instance he also found, in the alternative, that the decision of the board was unreasonable based on a balancing of the probabilities.

■ The record does not indicate why the master ruled in the alternative. It is clear, however, that in reviewing the decision of the board in terms of whether reasonable men could have arrived at the same decision, the master used the narrow standard urged upon it by the defendant of whether an agency's findings could have been reasonably made. It is of no consequence that the master may also have applied the balance of probabilities standard in arriving at his decision because this court will sustain a decision, even if based on mistaken grounds, if there are valid alternate grounds to support it. *Sprague v. Town of Acworth*, 120 N.H. 641, 644, 419 A.2d 1075, 1076 (1980); *Burns v. Bradley*, 120 N.H. 542, 546–47, 419 A.2d 1069, 1072 (1980).

The defendant also argues that the master erred in finding that the evidence before the planning board was insufficient for the board to deny the subdivision application of the plaintiff. The record reveals that the planning board denied the application on several grounds, including its conclusion that the intensive use of the type of soil, and the degree of the slope of the Stinson Trust property, would create a serious environmental hazard. The defendant specifically asserts that there was sufficient evidence regarding the slopes and soils for the board to deny the application.

■ The master found that the testimony of two engineering firms retained by the developer and the testimony of the consulting engineer retained by the town was "consistent" and "specific" in concluding that the likelihood of adverse environmental impact was negligible, given proper construction and proper safeguards. The master concluded that this evidence required a finding that the proposed subdivision would not adversely affect the environment. The defendant asserts that the testimony of a soil conservationist with the Soil Conservation Service controverted the evidence of the other experts and was sufficient evidence upon which the board could base its denial of the application. Although the soil conservationist stated that there were severe limitations on the use of one type of soil present in the property, he further stated that engineering modification could render this soil type suitable for the proposed use. He also conceded that the "raised leach field" designed by an engineering firm retained by the developer was a modification acceptable to the Soil Conservation Service. Accordingly, we agree with the court that there was insufficient evidence presented to the planning board for reasonable men to conclude

that the proposed subdivision would adversely harm the environment. *See Hynes v. Whitehouse*, 120 N.H. 417, 420–21, 415 A.2d 876, 878 (1980).

A third issue is raised by the plaintiff, who alleges that the master erred in finding that the planning board did not act in bad faith or with malice and in not awarding him costs and attorney's fees under RSA 36:34 V (Supp. 1975). There is evidence to support the master's finding that there was no bad faith or malice on the part of the defendant. Consequently, we find no error in his refusal to award costs and attorney's fees. *Harkeem v. Adams*, 117 N.H. 687, 691, 377 A.2d 617, 619 (1977); *cf. Win-Tasch Corp. v. Town of Merrimack*, 120 N.H. 6, 11, 411 A.2d 144, 147 (1980).

*Affirmed.*

All concurred.