Original
No. 86-133

PETITION OF THE STATE EMPLOYEES' ASSOCIATION OF
NEW HAMPSHIRE, INC., THOMAS J. GOULETTE, & a.
(New Hampshire Personnel Commission)

July 23, 1987

*Clark, Cook & Molan P.A.*, of Concord (*Robert T. Clark* on the brief and orally), for the petitioners.

*Stephen E. Merrill*, attorney general (*Peter C. Scott*, assistant attorney general, on the brief and orally), for the State.

BROCK, C.J.   In this petition for a writ of certiorari, we are asked to determine whether differential pay scales applied to academic employees of the State depending upon their date of hire deny such academic employees equal pay for equal work contrary to (1) the equal protection guarantee of part I, articles 1 and 12 of the New Hampshire Constitution, or (2) RSA 98:13 and *Slayton v. Personnel Commission*, 117 N.H. 206, 371 A.2d 1159 (1977). For the reasons that follow, we answer question one in the negative, question two in the affirmative, and hold that the petitioners are entitled to retroactive pay for time worked in the class from September 3, 1975, until June 15, 1979.

This case has a long and complicated history, centering around the creation of a tripartite system whereby academic employees are paid at three different rates depending upon when the employees were hired. Prior to September 1972, State academic employees worked a traditional academic year of nine months or approximately 180 school days. In September 1972, a number of positions, including that of remedial teacher at the Laconia State School, were converted to a twelve month or full-year (235 working days) schedule. The teachers' duties remained the same, but the number of working days was increased. To compensate these full-year employees for the additional days worked, the director of personnel raised their salary to 14/12 (1.1667) times the salary received by an academic year teacher of the same labor grade and step. The problem was that the full-year teachers were working 1.3056 times the number of days worked by academic year teachers, but were only being paid 1.1667 times as much. The result was a difference of up to almost $6.00 per day, with the academic year teachers receiving the higher rate. The increase was apparently based upon the erroneous assumption that the academic year was ten months long and that the full-year employee would therefore be working an additional two months. In reality, however, the academic year was only nine months long. Thus, the full-year teacher received an additional two months' salary for three months' more work.

In 1974, the full-year employees filed a classification and compensation appeal, claiming that they were not receiving equal pay for equal work. In May 1975, the director determined that the academic year teachers were being overpaid because their annual wages were originally determined on the assumption that they worked ten months per year. His solution was to do nothing to

remedy the discrepancy between the existing employees, but to pay newly hired academic year teachers a lower wage to reflect the fact that they would work only nine months per year (.9167 of the salary received by existing school year employees). This decision resulted in the promulgation of the "Group B" pay schedule, which remains in effect for academic employees hired between September 2, 1975, and November 30, 1976. The director's decision was appealed to the personnel commission and then this court. *See Slayton*, 117 N.H. 206, 371 A.2d 1159. While the appeal was pending, the department of personnel promulgated a further revised salary schedule, reducing the salary of those individuals hired on or after December 1, 1976 ("Group C"). Thus, as of December 1, 1976, three groups of academic employees existed: the first hired before September 2, 1975 (Group A); the second hired between September 2, 1975, and November 30, 1976 (Group B); and the third hired on or after December 1, 1976 (Group C).

In March 1977, this court held in *Slayton* that Joyce Slayton, a full-year remedial teacher, was being underpaid, and ordered that Slayton's per diem pay be brought to the level of the pre-September 2, 1975, academic year teachers. 117 N.H. at 209, 371 A.2d at 1161. The response of the personnel commission and the director of personnel was to raise the pay of full-year personnel hired before September 2, 1975. This interpretation, however, left unequal the rates of pay of those hired on September 2, 1975 or later. This court's order in *Slayton* was interpreted by the director as applying the equal pay for equal work principle to equalize the pay between only academic year and full-year teachers who were not equalized by the director's two prospective rulings (creating Groups B and C). The plaintiffs in the present action represent current and former State academic employees who are (or were) paid under either the Group B or Group C pay scales.

In 1979, the legislature formally adopted the differential pay basis for academic employees. Laws 1979, 434:35. In 1986, however, the legislature substantially altered the pay scales for academic employees. The 1986 legislation effectively rejected the Group B and Group C pay schedules. Laws 1986, 231:3; *see* RSA 99:1-a (Supp. 1986). The legislation provided that all academic year employees be paid at the Group A rate, and that all academic employees working more than an academic year of 180 working days receive a pro rata increase in their salary based upon the number of additional working days per year. Accordingly, as a result of the 1986 legislation, all academic employees would eventually be placed on the same pay scale.

In *Petition of State Employees' Association*, 127 N.H. 89, 497 A.2d 860 (1985), the same petitioners involved in the present appeal were denied an order from this court to proceed as a class action. The personnel commission later held a hearing on the merits and found no violation of RSA 98:13, XIII, nor of the equal protection clauses of the State or Federal Constitutions. This petition for a writ of certiorari followed, seeking reversal of the commission's decision.

On appeal, the petitioners first argue that the personnel commission's decision upholding the constitutionality of the Group B and Group C pay schedules is contrary to the agreed facts in the record and erroneous as a matter of law. They assert that the Group B and Group C pay scales, adopted by Laws 1979, 434:35, are an unconstitutional denial of equal protection of the law in violation of part I, articles 1 and 12 of the New Hampshire Constitution. Second, they contend that the personnel commission's decision upholding these pay scales during the period before the 1979 statute is erroneous as a matter of law because it relies on a retrospective application of Laws 1979, 434:35, contrary to part I, article 23 of the New Hampshire Constitution. The State, on the other hand, argues that the director's actions with respect to this case were justified because he merely grandfathered the then-existing pay schedules for previously hired teachers, and that such action did not deny the petitioners equal protection of the law, nor did it conflict with the statutory equal pay provision, RSA 98:13, XIII.

## I. *Equal Protection Analysis*

We first discuss the petitioners' allegation that the tripartite pay schedule, adopted by Laws 1979, 434:35, denies the lower paid employees equal protection of the law. N.H. CONST. pt. I, arts. 1 & 12. We note at the outset that, as explained by the petitioners in their petition for writ of certiorari, the federal equal protection issue is not presently before this court. The petitioners explain that they are not seeking review of any issue of federal law, constitutional or otherwise, because such issue was never raised at any stage of the proceedings before the personnel commission. Thus, we are only concerned here with their equal protection argument under the New Hampshire Constitution.

In its decision, the personnel commission applied the rational basis test and determined that the tripartite pay schedule was rationally related to the legitimate State interest of attempting to remedy the inequities in the academic pay schedule as originally enacted. The petitioners challenge the commission's application of the rational basis test and its conclusion that the tripartite pay

system was rationally related to remedying inequities in the existing academic pay system.

In considering this equal protection challenge, we must inquire as to the interests and rights affected by the statutory classification in order to determine the appropriate standard of review to be applied in this case. *See Belkner v. Preston*, 115 N.H. 15, 17–18, 332 A.2d 168, 170–71 (1975); *Carson v. Maurer*, 120 N.H. 925, 931–32, 424 A.2d 825, 830–31 (1980). The petitioners first suggest that equal pay for equal work is a fundamental right and that, therefore, the legislation at issue must be subject to strict judicial scrutiny. They assert that equal pay for equal work is a precondition to the ownership, use and enjoyment of private property, which are fundamental rights, *see Merrill v. City of Manchester*, 124 N.H. 8, 14, 466 A.2d 923, 927 (1983); *Gazzola v. Clements*, 120 N.H. 25, 29, 411 A.2d 147, 151–52 (1980), so it cannot be said that equal pay for equal work is of any less stature. In the alternative, they assert that the legislation at issue is subject to the middle level of scrutiny because, for example, "[t]he insult to individual worth resulting from a denial of equal pay for equal work is very similar to the insult to individual esteem which is inherent in classifications based on gender or legitimacy."

■■ Upon examination of the nature of the classification at issue and the rights and interests affected, we conclude that the personnel commission was correct in applying the rational basis test to the classification at issue in this case. The plaintiffs in this case have alleged an economic harm and concede that the case does not involve a recognized suspect class. Absent a showing that a suspect class is involved, economic classifications are typically subject to the rational basis test, *Boehner v. State*, 122 N.H. 79, 83, 441 A.2d 1146, 1148 (1982); *Valley Bank v. State*, 115 N.H. 151, 155, 335 A.2d 652, 654 (1975), and the burden is on the challenger (the petitioners) to prove that whatever classification is promulgated is arbitrary or without some reasonable justification, *Valley Bank, supra* at 155, 335 A.2d at 654.

■■ The next step in our analysis is to determine whether the classification providing differential pay scales for academic employees depending on their date of hire is rationally related to a legitimate State interest. *See Opinion of the Justices*, 117 N.H. 533, 537, 376 A.2d 118, 120 (1977). We hold that it is. "The first inquiry concerning equal protection is whether persons similarly situated are being treated differently." *Gazzola*, 120 N.H. at 29, 411 A.2d at 151; *Carson*, 120 N.H. at 931, 424 A.2d at 830. Equal

protection does not require complete equality in the face of factual differences, *Opinion of the Justices*, 115 N.H. 222, 223, 337 A.2d 354, 356 (1975), or exact mathematical equivalence, *Estate of Cargill v. City of Rochester*, 119 N.H. 661, 668, 406 A.2d 704, 708 (1979).

Several reasons have been advanced in support of a determination that a rational basis exists for the manner in which the legislature chose to pay academic employees. The State asserts that the primary goal of the 1979 legislation was to establish the appropriate level of compensation for academic employees relative to the level of compensation for nonacademic employees. The legislature chose to grandfather the pay for existing academic employees, ratifying classifications of academic employees based upon the employees' date of hire. The State further asserts that the use of grandfather provisions has been approved by this and other courts as an appropriate method for resolving difficult legislative and administrative dilemmas.

For instance, in *Valley Bank*, 115 N.H. at 156, 335 A.2d at 655, this court held both sensible and constitutional a grandfather clause contained in the branch-bank statute which provided, in effect, an advantage for financial institutions founded prior to a certain date by limiting the proximity of potential competition. In addition, in *Richardson v. Brunelle*, 119 N.H. 104, 107, 398 A.2d 838, 840–41 (1979), this court upheld a grandfather clause which applied to nurses licensed before 1975. Prior to 1975, an individual with equivalent practical experience did not need to have a degree to be licensed as a practical nurse. *Id.* at 106, 398 A.2d at 840. Later legislation, however, required that persons receive a degree from an approved school of practical nursing before they could be licensed to practice in New Hampshire. *Id.* This court found that the grandfather clause met the rational basis test in part because it protected the rights of those licensed under the previous laws.

■ This is precisely what the director attempted to do in the present case when he originally created the tripartite pay system. By grandfathering the salary of the existing academic employees, the director recognized their increased expectations and the burden a decrease in pay would cause them. On the other hand, the new employees were told about the pay differential prior to hiring. Thus, they had no expectation of receiving the increased salary. We hold that grandfathering is a practical way of easing the transition to the new pay schedule, and that the classifications at issue are rationally related to a legitimate State interest. Therefore, the 1979

legislation does not deny the academic employees in Groups B and C equal protection of the laws.

## II. *Statutory Analysis*

The petitioners claim that prior to the adoption of the tripartite pay system by the legislature in 1979, Laws 1979, 434:35, the pay scales created by the director of personnel clearly violated RSA 98:13, XIII. They assert, therefore, that the commission's decision upholding those pay scales was clearly erroneous as a matter of law because it relied on a retrospective application of Laws 1979, 434:35, contrary to part I, article 23 of the New Hampshire Constitution.

On the issue of whether the tripartite pay system violated RSA 98:13, XIII, the personnel commission stated that "[a]ny merit this argument may have had, has been lost in the legislature's enactment of 1979 Laws 434:35." The petitioners concede that Laws 1979, 434:35 resulted in an implied selective repeal of RSA 98:13, XIII. Thus, they limit this statutory argument to the time period beginning with the inception of the differential pay scales on September 3, 1975, through the date of their adoption by the legislature on June 15, 1979. Laws 1979, ch. 434. They assert, however, that no language in the section expresses a clear legislative intent to apply the section retrospectively. Thus, part I, article 23 prevents the 1979 legislation from being applied retrospectively.

The petitioners cite *Slayton v. Personnel Commission*, 117 N.H. 206, 371 A.2d 1159 and *Proulx v. Personnel Commission*, 116 N.H. 311, 358 A.2d 871 (1976) to support their argument that the Group B and Group C pay schedules violate the express and implied directive of RSA 98:13, XIII (repealed Laws 1986, 12:12, I, eff. March 27, 1986).

RSA 98:13, XIII provided that the director of personnel is

> "[t]o be responsible for the preparation, maintenance and revision of a position classification plan for all positions in the classified service, based upon similarity of duties performed and responsibilities assumed, so that *the same qualifications may reasonably be required for, and the same schedule of pay may be equitably applied to, all positions in the same classification.*"

(Emphasis added.) In *Proulx*, the issue was whether application of rule IV, section 2(e) of the rules of the department of personnel treated minimum step employees unfairly in relation to employees

in higher steps of the same labor grade. 116 N.H. at 312, 358 A.2d at 872. This court did not reach the equal protection issue and instead found that rule IV, section 2(e) conflicted with the statutory directive in RSA chapter 98 that "uniform pay schedules be equitably applied to all employees within the same classification." *Id.* at 313, 358 A.2d at 873. In *Slayton,* we recognized that paying some teachers $56 per day for doing work identical to that done by other equally qualified teachers who were paid only $50 per day does not constitute equal pay for equal work as required by RSA 98:13, XIII. 117 N.H. at 209, 371 A.2d at 1161.

■ Upon close examination of RSA 98:13, XIII, we conclude that the tripartite pay schedule created by the director of personnel failed to provide the petitioners with equal pay for equal work. We find further support for this conclusion in *Proulx* and *Slayton.* In the present case, the pay schedule was not "equitably applied to all employees within the same classification." *Proulx, supra* at 313, 358 A.2d at 872. Employees received differential pay determined by their date of hire. RSA 98:13, XIII allowed the director of personnel to consider "similarity of duties performed and responsibilities assumed" in preparing a classification plan. It did not, however, provide for the consideration of the date of hire. The same schedule of pay was required to be equitably applied to all employees in the same classification. The director failed to meet this requirement in his creation of the tripartite system.

The State argues that this court should dismiss the statutory claim for failure to timely file an appeal with the commission. We reject this argument. This is not a situation where petitioners sat by idle, failing to raise the issue. On the contrary, the petitioners made repeated efforts to obtain the relief sought. The tripartite pay system has been challenged, in one form or another, almost since its inception. Thus, under these limited circumstances, equity and justice require that the petitioners' rights under the statute be recognized.

■ Therefore, we hold that the petitioners are entitled to retroactive pay for time worked in the classification from September 3, 1975, until June 15, 1979, and remand to the personnel appeals board (*see* RSA 21-I:45 (Supp. 1986), eff. March 27, 1986) for further proceedings consistent with this opinion.

*Affirmed in part; reversed in part.*

All concurred.