The STATE EMPLOYEES' ASSOCIATION OF NEW HAMPSHIRE, INC.; Thomas J. Goulette; Elizabeth Hamlin–Morin

v.

Roy Y. LANG, individually and as Director, New Hampshire Department of Personnel, et al.

Civ. No. 82–374–D.

United States District Court, D. New Hampshire.

Feb. 17, 1988.

---

Robert T. Clark, Concord, N.H., for plaintiff.

Daniel J. Mullen, Asst. Atty. Gen., Concord, N.H., for defendant.

## ORDER

DEVINE, Chief Judge.

Plaintiffs State Employees' Association of New Hampshire, Inc., Thomas J. Goulette, and Elizabeth Hamlin–Morin [hereinafter collectively referred to as "SEA"] bring this civil rights action on behalf of certain New Hampshire state academic employees against the State of New Hampshire ("State") and twenty-three state officials in their official and personal capacities. SEA alleges plaintiffs have been deprived of their equal protection rights under the Fourteenth Amendment to the United States Constitution. Jurisdiction of the Court is alleged under 42 U.S.C. §§ 1983 and 1988, and under 28 U.S.C. §§ 1331 and 1343(a)(3), (4).

SEA claims that the academic employees have been denied equal pay for equal work. Apparently, certain academic employees assigned to state salary Schedules B or C have been paid less than other academic employees who are assigned to Schedule A, even though all have the same job classification and have performed the same work. Plaintiffs seek damages, injunctive relief, and attorney fees, as well as class action certification on behalf of all affected academic employees pursuant to Rules 23(a), (b)(1)(A), (b)(2) and (b)(3), Fed.R.Civ.P.

Currently before the Court is defendants' motion to dismiss, Rule 12(b)(6), Fed.R. Civ.P., and SEA's objection thereto.

## Background [1]

In 1982 this Court issued an Order abstaining from further consideration of plaintiffs' section 1983 action pending state court determination of whether or not the three pay scales for academics based solely on date of hire violated New Hampshire law. Order (October 27, 1982). In the interim, the New Hampshire Supreme Court refused to force the Personnel Commission to administer all of SEA's equal pay claims in a class action. *Petition of the SEA of NH, Inc.* (New Hampshire Personnel Commission), 127 N.H. 89, 91, 497 A.2d 860 (1985). Also, in March 1986 the New Hampshire Legislature amended the 1979 law which had codified the three pay schedules at issue. New Hampshire Revised Statutes Annotated ("RSA") 99:1–a (Supp.1986). Finally, the New Hampshire Supreme Court ruled in July 1987 that although differential pay scales do not violate the state's constitution, they violate a 1986 statute, RSA 98:13 XIII (current version at RSA 21–I:42 II), and the New Hampshire Supreme Court's former decision in *Slayton v. Personnel Comm'n,* 117 N.H. 206, 371 A.2d 1159 (1977). *Petition of SEA of NH, Inc., Thomas J. Goulette, et al* (New Hampshire Personnel Commission), 129 N.H. 536, 541–43, 529 A.2d 968 (1987). The New Hampshire Supreme Court ordered the State to award petitioners retroactive pay for their time worked in the classification from September 3, 1975, until June 15, 1979, and remanded to the personnel appeals board for further proceedings consistent with the opinion. *Id.* at 543, 529 A.2d 968.

Armed with the new state law and the New Hampshire Supreme Court's 1987 *Goulette* decision, plaintiffs submitted an amended complaint seeking damages and injunctive relief in this court for the defendants' alleged violation of the Fourteenth Amendment. Additionally, SEA requests the Court's certification to proceed as a federal class action suit.

## Issues

In their motion to dismiss, defendants urge that the individual defendants are shielded from liability in their personal capacities under the doctrine of qualified immunity. Defendants also assert the defense of sovereign immunity on behalf of the State and on behalf of the individual defendants in their official capacities, claiming that the Eleventh Amendment to the United States Constitution bars a federal court from granting relief in a claim against the State. Lastly, defendants argue that there was no equal protection violation because the State had a rational basis for applying three separate pay schedules.

## Qualified Immunity

"Qualified immunity is provided for government officials because 'permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *Knight v. Mills,* 836 F.2d 659, 666 n. 9 (1st Cir.1987) (quoting *Anderson v. Creighton,* ⸺ U.S. ⸺, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987)). The qualified immunity defense is available to state executive and administrative officials whose official actions are challenged under section 1983. *Id.* at 665. To qualify for this affirmative defense, the state officials must perform discretionary functions, the challenged acts must fall within the scope of their authority, and the acts must be of the type typically performed in that official role. *Id.* at 665–666. Even if implementing the three pay scales fell within the individual defendants' typical duties, and even if each defendant had the ability to challenge the lawfulness of the tripartite salary schedule, defendants maintain that the pay system did not violate a clearly

---

**1.** A lengthy recitation of the procedural history of this case from 1972 to 1982 is hereby incorporated by reference to this Court's Order of October 27, 1982.

established statutory or constitutional right.

In order to overcome qualified immunity, the officials' acts must violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). From 1979 until 1986, New Hampshire statutory law allowed a three-scale pay schedule. *See* RSA 99:1–a (Supp. 1979) (codifying the three pay scales). Although this law was amended in 1986, *see* RSA 99:1–a (Supp.1986), the New Hampshire Supreme Court did not decide that the different pay scales were illegal until July 1987. *See Petition of SEA, supra,* 129 N.H. 543, 529 A.2d 968. It would be patently unreasonable to expect a state official to know that the three salary schedules violated the Fourteenth Amendment when those officials were acting in accordance with existing state law. *See Davis v. Scherer,* 468 U.S. 183, 195–96 & n. 13, 104 S.Ct. 3012, 3019–20 & n. 13, 82 L.Ed.2d 139 (1984). Because the individual defendants did not violate a clearly established constitutional right of which a reasonable person would have known, the Court finds the defendants not to be liable in their personal capacities.

### The Eleventh Amendment

■ SEA contends that because the tripartite pay schedules allegedly violate the equal protection clause of the Fourteenth Amendment, the academic employees are entitled to damages and injunctive relief against the State of New Hampshire and the individual defendants in their official capacities. In their defense, defendants assert that the Eleventh Amendment bars this Court from granting relief.

Because the State of New Hampshire is the real party in interest, the Court will only entertain these charges as they pertain to the State. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.... It is *not* a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham,* 473 U.S.

159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *cf.* Rule 17(a), Fed.R.Civ.P.

■ The Eleventh Amendment states:
The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

SEA argues that because this suit is not against the State of New Hampshire and the named officials by citizens of another state or citizens of a foreign state, the Eleventh Amendment by its own terms does not apply to this case. The Court disagrees. Notwithstanding the limited terms of the Eleventh Amendment, the sovereign immunity principle embraced therein prevents a federal district court from asserting jurisdiction over a private suit brought by a litigant against his or her own state without the state's consent. *Pennhurst State School and Hosp. v. Halderman,* 465 U.S. 89, 98, 104 S.Ct. 900, 906, 79 L.Ed.2d 67 (1984). Thus, the Eleventh Amendment provides defendants with a sovereign immunity defense.

In the alternative, plaintiffs argue that the State of New Hampshire has waived its sovereign immunity. The Supreme Court recognizes a state's right to waive its Eleventh Amendment sovereign immunity, provided that the state's consent to be sued in federal court is "unequivocally expressed." *Welch v. State Dept. of Highways and Pub. Transp.,* — U.S. —, —, 107 S.Ct. 2941, 2947, 97 L.Ed.2d 389 (1987); *Pennhurst, supra,* 465 U.S. at 99, 104 S.Ct. at 907. The New Hampshire Supreme Court recognizes a waiver of sovereign immunity "if the legislature has provided for it by statute either expressly or by reasonable implication." *SEA of NH v. Belknap County,* 122 N.H. 614, 621, 448 A.2d 969 (1982).

■ SEA argues at great length that the State has repeatedly defended lawsuits against its employees in state court. Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss [hereinafter "Plaintiffs' Memorandum"] at 4. Yet, the long list of New Hampshire Supreme Court

decisions cited by SEA establishes only that the State has consented to be sued in its own courts. "[A] state's waiver of the Eleventh Amendment immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts." *Pennhurst, supra,* 465 U.S. at 99 n. 9, 104 S.Ct. at 907 n. 9; *see also Metcalf & Eddy, Inc. v. Town of Gorham, N.H.,* 587 F.Supp. 32, 33–34 (D.N.H.1984) (even though RSA 491:8 allows suits against the state in state court, the New Hampshire Legislature has not expressly waived sovereign immunity in federal court); *State v. Brosseau,* 124 N.H. 184, 191, 470 A.2d 869 (1983) (state statute constituted waiver of sovereign immunity in state court but was not an intent by legislature to waive its Eleventh Amendment immunity from suit in federal court). In the instant action, neither New Hampshire's equal pay law, RSA 21–I:42 II (Supp.1986), nor New Hampshire's common law demonstrates New Hampshire's intent to waive its sovereign immunity to a lawsuit by its own employees in federal court. It appears that the Eleventh Amendment may preclude this Court from entertaining this lawsuit against the State or its officials.

▪ SEA also argues that the State's voluntary creation of an employment system for its classified employees gives the employees a federally-protected property interest which constitutes an automatic waiver of sovereign immunity under federal law. Plaintiffs' Memorandum at 5. The Court disagrees. The federal authorities which SEA cites are Fourteenth Amendment due process cases which address property rights as part of the parties' due process claims. *Id.* at 3, 4 (citing *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978); and *Moynihan v. Hickey,* 627 F.Supp. 466 (D.N.H.1986)). Because SEA does not claim violation of due process, the Court finds its arguments inapposite.

▪ Nonetheless, the Court notes one exception to the Eleventh Amendment bar of suits against the state in federal court.

Citizens may sue for injunctive relief against a state official in federal court for a violation of federal constitutional law. *Pennhurst, supra,* 465 U.S. at 102–03, 104 S.Ct. at 909. And, if a section 1983 suit "... alleges a constitutional claim, the federal court is barred from awarding damages against the state treasury even though the claim arises under the Constitution." *Id.* at 120, 104 S.Ct. at 918. Because SEA is asserting a Fourteenth Amendment constitutional claim, defendants are vulnerable to prospective injunctive relief notwithstanding sovereign immunity.

▪ Therefore, even assuming, arguendo, that the Court finds merit to plaintiffs' equal protection claim, the sole remaining form of relief this Court could grant would be prospective injunctive relief; that is, the Court could order the Personnel Commission to immediately eliminate Schedules B and C. And, as defendants point out, the New Hampshire Legislature has already repealed Schedules B and C. *See* RSA 99:1–a (Supp.1986). Furthermore, the New Hampshire Supreme Court has ruled that three pay schedules for state academic employees based solely on date of hire were illegal under the 1986 law because they do not provide equal pay for equal work. *Petition of the SEA, supra,* 129 N.H. at 537, 529 A.2d 968. Thus, the substantive merit of SEA's claim has already been determined at the state level.

Essentially, plaintiffs ask this Court to issue an order enforcing existing state law. Although the Supreme Court allows suit against a state for injunctive relief if there is a violation of federal law, *Pennhurst, supra,* 465 U.S. at 102–03, 104 S.Ct. at 909, the *Pennhurst* court specifically held that claims in federal court that state officials violated *state* law are barred by the Eleventh Amendment. *Id.* at 106, 104 S.Ct. at 911. "This jurisdictional bar applies regardless of the nature of the relief sought." *Id.* at 100, 104 S.Ct. at 908. Thus, the plaintiffs have failed to state a claim upon which relief may be granted. Rule 12(b)(6), Fed.R.Civ.P.

### Conclusion

The doctrine of qualified immunity protects the individual defendants in their personal capacities from liability. Furthermore, the State and the individual defendants in their official capacities are immune from retroactive damages and prospective injunctive relief under the Eleventh Amendment doctrine of sovereign immunity. Accordingly, the Court must grant defendants' motion to dismiss (document no. 46) for failure to state a claim upon which relief can be granted.

SO ORDERED.

### APPENDIX

### ORDER

Differences between the pay schedules for certain academic employees of the State of New Hampshire give rise to the instant suit for declaratory relief, injunctive relief, and damages. The State Employees' Association of New Hampshire ("SEA") brought this action pursuant to 42 U.S.C. § 1983, alleging that the State's regulatory and legislative scheme resulting in the existence of three separate academic employee schedules for the same positions based on the date of hire violates the Equal Protection Clause of the United States Constitution. SEA further alleges that the State's regulatory and legislative scheme violates N.H. RSA 98:13 XIII and N.H. CONST. pt. I, arts. 1 and 12.

In due course defendants filed motions to dismiss, asserting that plaintiffs' claims for damages were barred by the Eleventh Amendment and that the § 1983 claim failed to state a claim upon which relief could be granted under the Equal Protection Clause. By Order dated September 24, 1982, this Court deferred consideration of the motions to dismiss pending receipt of briefs addressing whether the Court should stay its proceedings and abstain pursuant to the doctrine enunciated in *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and its progeny.

The issue briefed by the parties and currently before the Court is whether the Court should stay this action and abstain from deciding the constitutional questions before it if resolution of the state law claims[1] in state court might terminate the action or substantially alter the constitutional questions presented. Abstention from the exercise of its jurisdiction by a federal court is "the exception, not the rule", *Santasucci v. Gallen*, 607 F.2d 527, 528 (1st Cir.1979), *quoting Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1975). "Abdication of the obligation to decide cases can be justified under the doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest." *Colorado River Water Conservation District v. United States, supra* at 813, 96 S.Ct. at 1244, *quoting County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959). One such set

---

1. N.H. RSA 98:13 XIII provides:

   To be responsible for the preparation, maintenance and revision of a position classification plan for all positions in the classified service, based upon similarity of duties performed and responsibilities assumed, so that the same qualifications may reasonably be required for, and the same schedule of pay may be equitably applied to, all positions in the same classification. After such classification plan has been approved by the commission, the director shall allocate the position of every employee in the classified service to one of the classifications in the plan.

   N.H. CONST. pt. I, arts. 1 and 12 provide:

   (1) All men are born equally free and independent: Therefore, all government, of right, originates from the people, is founded in consent, and instituted for the general good.

   . . . .

   (12) Every member of the community has a right to be protected by it, in the enjoyment of his life, liberty, and property; he is therefore bound to contribute his share in the expense of such protection, and to yield his personal service when necessary. But no part of a man's property shall be taken from him, or applied to public uses, without his own consent, or that of the representative body of the people. Nor are the inhabitants of this state controllable by any other laws than those to which they, or their representative body, have given their consent.

of circumstances exists "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law". *Id.* at 814, 96 S.Ct. at 1244, *quoting County of Allegheny v. Frank Mashuda Co., supra* at 189, 79 S.Ct. at 1063.

> '[W]hen a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state-law question and thus avoid the possibility of unnecessarily deciding a constitutional question.'

*Santasucci v. Gallen,* 607 F.2d 527 (1st Cir.1979), *quoting Harris County Commissioners Court v. Moore,* 420 U.S. 77, 83, 95 S.Ct. 870, 875, 43 L.Ed.2d 32 (1975).

The subject matter of this litigation has a lengthy history of development in state administrative agency and state court proceedings. A recitation of the procedural history of this case is necessary to a proper understanding of the abstention issue. The factual allegations pertaining to this litigation are virtually uncontested,[2] the parties differing not so much on these matters but on the legal conclusions to be derived therefrom.

Prior to 1972 academic personnel for the State of New Hampshire ("State") worked the traditional academic-year schedule of nine months (180 days). In order to keep salaries competitive, the State paid these employees a twelve-month year (235 day) salary for working an academic year. In September of 1972 certain academic employees of the Laconia State School began to work a full twelve-month year. The Director of Personnel adjusted their salaries by paying them fourteen-twelfths of their academic-year salaries. This adjustment was based on the erroneous assumption that academic employees worked a ten-month year. Because the academic employees worked a nine-month year, the addition of two months' salary fell one month short of equalizing the pay between academic- and full-year teachers. The bottom line was that academic-year teachers were paid a higher per diem rate than full-year teachers. Complaint ¶ 52; *Slayton v. Personnel Comm'n,* 117 N.H. 206, 371 A.2d 1159 (1977).

This problem was called to the attention of the Personnel Commission. Effective September 2, 1975, the Director of Personnel set a new salary schedule for academic-year teachers hired after that date (Group B Schedule). These employees were paid at a lower per diem rate than the pre-September 1975 academic-year teachers. Complaint ¶ 53.[3] The salaries of academic- and full-year employees hired prior to September 2, 1975 (Group A Schedule), were not altered in any respect. Complaint ¶ 53; *Slayton v. Personnel Comm'n, supra.*

The Director of Personnel's decision not to equalize the per diem rate of academic- and full-year teachers hired prior to September 1975 was eventually reviewed on writ of certiorari by the New Hampshire Supreme Court. The Court held that the payment of two rather than three months' salary to plaintiff, a full-year teacher hired prior to September 2, 1975, violated the equal pay for equal work principle embodied in N.H. RSA 98:13 XIII, and ordered that plaintiff be properly compensated. *Slayton v. Personnel Comm'n, supra.* The Court did not discuss plaintiff's equal protection claims under the state and federal constitutions. According to the complaint, the *Slayton* decision was made applicable to most full-year academic employees hired before September 2, 1972 (Group A Schedule). *Id.* at ¶ 58.

---

**2.** *See, e.g.,* Complaint ¶¶ 34–63 and *compare* Stipulation of Facts submitted to the New Hampshire Supreme Court in connection with *State Employees' Association of New Hampshire v. Roy Y. Lang,* 119 N.H. 637, 406 A.2d 702 (1979), attached as "Exhibit A" to defendant's Memorandum in Support of Motion to Dismiss filed June 16, 1980, and the summary of facts contained in defendant's memorandum at pp. 2–4.

**3.** According to the complaint at ¶ 53, there are also a limited number of eleven-month academic employees of the State. The Director of Personnel's revised pay schedule also took these teachers into account.

While *Slayton* was pending, the Director of Personnel adopted a third pay schedule for persons hired on or after December 1, 1976 (Group C Schedule). Complaint ¶ 55. Finally, in 1979 the Legislature enacted a pay schedule for state employees holding academic positions. Laws of 1979, Ch. 434:35 II, III, and IV, and Ch. 434:42 II, III, and IV; *see* N.H. RSA 99:1–a (Supp.1979 and Supp.1981). Plaintiffs herein contend that the legislation codified the Group C pay schedule as it then existed, Complaint ¶ 61, a contention with which defendants do not appear to take issue.

The apparent result of this complicated set of proceedings is that three separate salary schedules for academic employees of the State are now in existence, all of which allegedly compensate individuals performing the same job at different rates of pay depending on their date of hire. Complaint ¶ 62. The gravamen of plaintiffs' complaint is that Group B and Group C employees are paid at a lower per diem rate than Group A or *"Slayton"* employees, and that all salary schedules must be equalized at the Group A per diem rate.

Plaintiffs have challenged the legality of the three-part salary schedule on two separate occasions in state court. In *State Employees' Association v. Lang,* 119 N.H. 637, 406 A.2d 702 (1979), SEA sought a writ of mandamus to compel the Director of Personnel to abolish the tripartite salary schedule for academic employees and to "increase the rate of compensation of all State classified academic employees to that received by such employees hired before September 2, 1975". 119 N.H. at 638, 406

A.2d at 703. Without reaching the merits of the controversy, the New Hampshire Supreme Court declined to issue the writ, holding that plaintiffs had no right to the extraordinary remedy of mandamus because they had not exhausted available remedies by bringing an administrative appeal to the Director of Personnel. The Court further stated that plaintiffs could petition for writ of certiorari if they were dissatisfied with the result of their administrative appeals.

SEA's next challenge to the tripartite pay schedules came about as a result of collective bargaining. After an unsuccessful series of proceedings before the New Hampshire Public Employee Labor Relations Board ("PELRB"), the SEA brought an appeal to the New Hampshire Supreme Court claiming that the State Negotiating Committee ("SNC") had committed an unfair labor practice when it refused to negotiate with SEA concerning the equalization of the three salary schedules and when the SNC submitted legislation bearing thereon. *Appeal of State Employees' Association,* 120 N.H. 690, 422 A.2d 1301 (1980). The Supreme Court held that *Slayton* was not controlling, adopting the PELRB's reasoning that SEA's bargaining request more closely resembled a request for reclassification involving the State merit system than a wage request as to which there would be an obligation to bargain.[4] The Supreme Court therefore held that the PELRB did not abuse its discretion in ruling that the SNC's actions were within its management prerogative and that equalization of the

---

4. Although the SEA had chosen to characterize its attempts to collectively bargain as an effort to effectuate 'equal pay for equal work' under the *Slayton* decision, the PELRB concluded that their efforts to implement the same rate of pay for certain classes of employees in fact constituted an attempt to infringe upon the state employee classification system. Under RSA 273–A:3 III the State can establish a merit system which allows advancement for its employees. This power is consistent with the definition of managerial policy within the exclusive prerogative of the public employer' as set forth in RSA 273–A:1 XI. The SEA essentially is not claiming unequal salaries here, but is seeking to abolish the tripartite

classification system which the personnel department has established to determine compensation based on when the academic employee was hired and the length of the respective school year. The logical extension of the SEA attempt would be the pay scale for all academic employees regardless of when they began to work, thereby altering the state merit system as it relates to the designation of salaries.... The PELRB held that such a result falls within the managerial prerogative of the public employer and, therefore, is not negotiable.
*Appeal of State Employees' Association, supra* at 692–93, 422 A.2d at 1303 (citations omitted).

three-part salary schedule was not a mandatory subject of collective bargaining.

From this tangled web several key aspects of this case are drawn into sharper focus. First, plaintiffs are challenging a complex and interwoven set of administrative rulings, state statutes, and state court precedents; the propriety of the Director of Personnel's interpretation of his or her duties and obligations under N.H. RSA 98:13 XIII and N.H. RSA 99:1–a is what is called into question. Plaintiffs in their brief on the abstention issue argue that the enactment of N.H. RSA 99:1–a (purportedly establishing the so-called Group C Schedule) and the Director of Personnel's establishment of separate pay schedules in conformity thereto is violative of the New Hampshire Supreme Court's decision in *Slayton*, N.H. RSA 98:13 XIII, and the state constitution. Thus it is clear that the questions of state law central to this dispute are ones which might moot or modify the federal constitutional questions presented.

Second, the questions of state law are unsettled. While plaintiffs argue that *Slayton* is controlling, the Court does not perceive the issues here to be quite so straightforward. The *Slayton* case dealt with the propriety of paying various employees within the Group A schedule at differing rates. The instant matter challenges the propriety of three separate schedules, one statutorily created, defined by date of hire. *Slayton* did not address this problem, and in *Appeal of State Employees' Association, supra,* the existence of the tripartite system was characterized as a classification or merit system rather than a wage question. Whether the rationale of the latter case would have any vitality outside of the labor relations context is a matter of state law as to which the Court should not make "a tentative answer which may be displaced tomorrow by a state adjudication". *Railroad Comm'n v. Pullman Co., supra* at 500, 61 S.Ct. at 645. A state court decision as to the proper characterization of the regulatory or statutory scheme would at a minimum clarify the federal equal protection question presented, if not moot it entirely.

The enactment of N.H. RSA 99:1–a poses additional unsettled questions of state law. Plaintiffs argue that the clear implication of *Slayton* is that equal pay for equal work is a principle not only of statutory construction under N.H. RSA 98:13 XIII, but also of constitutional dimension under the state constitution. "[W]hen the state court's interpretation of the statute or evaluation of its validity under the state constitution may obviate any need to consider its validity under the Federal Constitution, the federal court should hold its hand, lest it render a constitutional decision unnecessarily." *City of Meridian v. Southern Bell Telephone & Telegraph Co.,* 358 U.S. 639, 641, 79 S.Ct. 455, 457, 3 L.Ed.2d 562 (1959).

Third, "not only the character of the federal right asserted in this case, but even the availability of relief sought turn in large part on the same unsettled state-law questions". *Harris County Commissioners Court v. Moore, supra* at 88, 95 S.Ct. at 877. Assuming, *arguendo,* that this Court were to retain jurisdiction and decide the federal equal protection claims favorably to plaintiffs, difficult questions of prospective relief (and retrospective relief, depending on the determination of the Eleventh Amendment issue) would be presented, such as whether all academic employees should be paid at the Group A rate rather than at the Group B or Group C statutory rates. State law may well dictate one course over another. "Because the federal claim in this case is 'entangled in a skein of state law that must be untangled before the federal case can proceed' ", *id.* at 88, 95 S.Ct. at 87 (citations omitted), abstention would be proper in this case.

Finally, the Court rejects plaintiffs' assertion that the delay and confusion which would result from a decision to abstain are not justified by principles of federalism in this case. Plaintiffs' difficulty in obtaining full review in state court appears to be due in large part to the posture in which the issues were presented, i.e., by writ of mandamus, or in the guise of an unfair labor practice charge. In *State Employees' Association v. Lang, supra,* the New Hampshire Supreme Court indicated one avenue

by which such review could be obtained. Plaintiffs' claim that this route would require SEA to pursue 187 individual appeals speaks too much; the *Slayton* litigation involved only one appellant, but plaintiffs' own complaint alleges that *Slayton* has resulted in a uniform pay schedule for nearly all academic personnel hired prior to 1975. Although exhaustion of state remedies is not a prerequisite to the institution of a § 1983 action, *Patsy v. Board of Regents of the State of Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), the Court does not read the *Patsy* decision to overrule those cases holding abstention to be appropriate in exceptional circumstances, *see id.* at 2569 (White, J., concurring in part); *cf. Mills v. Rogers,* 457 U.S. 291, 102 S.Ct. 2442, 2452, 73 L.Ed.2d 16 (1982); *McNeese v. Board of Education,* 373 U.S. 668, 673–74, 83 S.Ct. 1433, 1436–37, 10 L.Ed.2d 622 (1963).

Exceptional circumstances exist here. Complex issues of state law are at the very foundation of this case. If state law is what plaintiffs claim, the federal questions presented will be mooted by a state court determination. If the relief plaintiffs seek is not to be found in state law, further explication of that law will nevertheless materially shape or alter the federal question presented. Moreover, the legal and equitable relief plaintiffs seek touches on a sensitive area of local concern and goes to the heart of the operation of state government. Abstention in this case is therefore proper to "'avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication'". *Lake Carriers' Assn. v. MacMullen,* 406 U.S. 498, 511, 92 S.Ct. 1749, 1757, 32 L.Ed.2d 257 (1972), *quoting Harman v. Forssenius,* 380 U.S. 528, 534, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50 (1965).

Accordingly, the Court stays this action and abstains pending a determination in state court of relevant questions of state law.

SO ORDERED.

October 27, 1982.