Original
Nos. 7911 & 7912

STATE EMPLOYEES' ASSOCIATION
OF NEW HAMPSHIRE, INC.

v.

BOARD OF TRUSTEES
NEW HAMPSHIRE STATE PRISON

SAME

v.

NEW HAMPSHIRE PUBLIC EMPLOYEE
LABOR RELATIONS BOARD

June 27, 1978

*Cleveland, Waters & Bass*, of Concord (*Howard J. Zibel* orally), for the plaintiff.

*David H. Souter*, attorney general (*Andrew R. Grainger*, attorney, orally), for the State.

DOUGLAS, J.   On December 2, 1976, the Board of Trustees of the New Hampshire State Prison (Trustees) unilaterally altered the hours of work of certain prison employees. That change of shift did not affect the number of hours that these employees worked. The State Employees' Association (SEA), which represented the affected employees, filed a complaint with the Public Employees Labor Relations Board (PELRB), claiming that shift hours are subject to collective bargaining, RSA 273-A:1 XI, and not a matter of managerial policy for exclusive executive discretion. *Id.*   Although the PELRB ultimately agreed with this contention, it made no affirmative finding that the failure of the trustees to bargain over this point was an unfair labor practice, RSA 273-A:5 I(e), (g). Instead, it ordered merely that "the parties . . . negotiate over the effects of the shift rotation plan [and] negotiate prior to any further changes." Number 7911 is the appeal of the trustees from the PELRB's finding that their action violated RSA ch. 273-A. Number 7912 is the appeal of the SEA from the order. SEA asks that we direct the PELRB to make a finding that the trustees committed an unfair labor practice and to issue a cease-and-desist order, RSA 273-A:6 VI.

We recently had occasion to consider the scope of the PELRB's discretion to fill in the interstices of RSA 273-A:1 in *New Hampshire Department of Revenue Administration v. PELRB*, 117 N.H. 976, 380 A.2d 1085 (1977). We noted that the legislature has vested the PELRB with primary authority to define the terms of that section. *Id.* at 978, 380 A.2d at 1086. Hence, the PELRB's decision on whether a change in hours is a matter for collective bargaining or managerial discretion will be reversed only for a "gross

abuse of discretion." *Id.* Because the bare term "hours" is vague and because neither the statutory context nor anything presented to us indicates that the legislature meant to reserve the assignment of shift time to managerial discretion, on this record we will not overturn the PELRB's finding that "shift change in and of itself cannot . . . constitute a managerial policy." We affirm number 7911.

RSA 273-A:6 VI states that when the PELRB has found a violation of section five—an unfair labor practice—it "shall issue a cease and desist order." The trustees do not dispute that the language of the statute is mandatory. Nevertheless in their brief they argued that the making of a finding of a violation is discretionary. The attorney for the PELRB addressed a letter to this court in which he stated that in the context of their decision, the language of the PELRB was equivalent to a finding of an unfair labor practice. Trustees' counsel at oral argument here objected to that letter and argued that either a prehearing stipulation barred the SEA from raising the meaning of the PELRB's order or that the SEA should be equitably estopped from raising that issue.

As we read the PELRB's decision, it did in fact find an unfair labor practice, regardless of their counsel's interpretation. The PELRB found that bargaining in good faith before the institution of the trustees' changes was necessary or their "unilateral action would be an unfair labor practice." That bargaining in fact did not occur. Thus credulity is strained to accept any interpretation of this language other than a finding of unfair practice. Indeed the language of the statute, which states that "[i]t shall be a prohibited practice . . . to refuse to negotiate in good faith," RSA 273-A:5 I(e), seems to require this ruling once the requisite facts have been found.

Although the parties did stipulate that the only issue to be decided was bargainability, it would be unfair to preclude the SEA from raising the issue of remedy at this time. SEA's contention is that the PELRB failed to fulfill statutory requirements. The remedy question did not exist before the PELRB issued its order. Therefore, the question could not have been within the contemplation of the parties when they executed the stipulation.

■ The clarity of the statute, RSA 273-A:6 VI, leaves no doubt that a cease-and-desist order should have issued returning the parties to the *status quo ante.* The trustees concede this point. However, the trustees could not have known they were violating the statute before the PELRB had defined the meaning of "hours." Furthermore, the factors that induced the PELRB to refrain from issuing the cease-

and-desist order are not without substance. Thus, we believe that the equities were sufficient in this case of first impression to justify a stay of the order, if such an order had been issued, permitting the parties to negotiate their differences without causing wholesale disruption of orderly prison procedures. It is open to the PELRB after it has issued the proper order to institute a temporary stay for this purpose if it finds such a stay desirable.

*Affirmed in part, reversed in part; remanded.*

BROCK, J., did not sit; the others concurred.