Public Employee Labor Relations Board
No. 7836

## THE STATE EMPLOYEES' ASSOCIATION OF NEW HAMPSHIRE, INC.

v.

## THE NEW HAMPSHIRE PUBLIC EMPLOYEE LABOR RELATIONS BOARD

December 29, 1978

*Thomas D. Rath*, attorney general (*James C. Sargent, Jr.*, assistant attorney general, orally), for the State Negotiating Committee.

*Cleveland, Waters & Bass*, of Concord (*Robert T. Clark* orally), for the State Employees' Association.

*McLane, Graf, Greene, Raulerson & Middleton P.A.* and *Jack B. Middleton*, of Manchester (*Sally Potter*, of Massachusetts, orally), for the New Hampshire Education Association, amicus curiae.

PER CURIAM.    This is an appeal under RSA 273-A:14 from a declaratory judgment of the Public Employee Labor Relations Board (PELRB) rendered pursuant to RSA 541-A:8 and Rule 8.1 of the Rules and Regulations of the PELRB upon a joint petition filed by the State Negotiating Committee (SNC) and the State Employees' Association (SEA). The PELRB found that certain collective bargaining contract proposals presented by the SEA to the SNC during the 1976–77 negotiations were not bargainable subjects under New Hampshire's collective bargaining statute, RSA ch. 273-A.

Laws 1975, ch. 490, now RSA ch. 273-A, established a State policy of "foster[ing] harmonious and cooperative relations between public employers and their employees and [of protecting] the public by encouraging the orderly and uninterrupted operation of government." Laws 1975, 490:1. To this end RSA 273-A:9 states: "Cost items and terms and conditions of employment affecting State employees generally *shall* be negotiated by the State. . . ." (Emphasis added.) This section, along with RSA 273-A:3, which requires that the State negotiate in "good faith," delineates the scope of the State's obligation and authority to bargain. That obligation, as well as that authority, is limited by only two exceptions, the "managerial policy" exception included within the definition of the phrase "terms and conditions of employment," RSA 273-A:1 XI, and the "merit system" exception contained in RSA 273-A:3 III. These limitations follow in full:

> [RSA 273-A:1] XI. 'Terms and conditions of employment' means wages, hours and other conditions of employment other than *managerial policy* within the exclusive

prerogative of the public employer, or confided exclusively to the public employer by statute or regulations adopted pursuant to statute. The phrase 'managerial policy within the exclusive prerogative of the public employer' shall be construed to include but shall not be limited to the function, programs and methods of the public employer, including the use of technology, the public employer's organizational structure, and the selection, direction and number of its personnel, so as to continue public control of governmental functions. (Emphasis added.)

[RSA 273-A:3] III. Matters regarding the policies and practice of any *merit system* established by statute, charter or ordinance relating to recruitment, examination, appointment and advancement under conditions of political neutrality and based upon principles of merit and competence shall not be subjects of bargaining under the provisions of this chapter. Nothing herein shall be construed to diminish the authority of the state personnel commission or any board or agency established by statute, charter or ordinance to conduct and grade merit examinations from which appointments or promotions may be made. (Emphasis added.)

The present action was commenced by a joint petition filed with the PELRB by the SNC, a committee constituted under RSA 273-A:9 to engage in labor negotiations on behalf of the State as employer, and the SEA, then the sole representative of State employees in labor negotiations. The two petitioners sought a definitive ruling with respect to the State's obligation to bargain certain contract proposals presented by the SEA. Those proposals deal with the following: (1) employee classification; (2) contracting out of bargaining unit work; (3) employee promotion, transfer and layoff, and seniority rights; (4) employee training and education; (5) employee discipline and involuntary separation; and (6) wage and salary administration.

A hearing was held before the PELRB on February 4, 1977, and on February 24, 1977, the PELRB ruled that many of the contract proposals were nonnegotiable because they were either "managerial policy within the exclusive prerogative of the public employer," or already covered by the rules published by the personnel commission pursuant to RSA ch. 98. The SEA requested and received a rehearing, following which the original ruling was reaffirmed. The matter is now before this court to determine whether the PELRB erred in its interpretation of RSA ch. 273-A.

In 1950, the legislature enacted Laws 1950, ch. 9 (RSA 98), which established for the first time in New Hampshire a State "merit system" for public employment, and created a department of personnel and a personnel commission with duties including the "recruitment, appointment, compensation, promotion, transfer, layoff, removal, and discipline of state employees." RSA 98:3. That statute requires the commission to "[m]ake such rules and regulations . . . as it shall deem necessary or proper to carry out its purposes." RSA 98:8 III. Subject to the approval of the commission and the Governor and Council, the director can "prescribe . . . rules for the classification, compensation, recruitment, selection, appointment, promotion, demotion, transfer, discipline, removal and lay-off of employees, . . . [and] for attendance, holidays, leaves of absence, merit rating and the hearing of appeals from employees." RSA 98:13 X. The 1975 statute (RSA ch. 273-A), however, includes no direct reference to chapter 98.

In the interim from 1950 to the present, the personnel commission promulgated a multitude of rules and regulations under chapter 98 pertaining to nearly every facet of public employment. The dilemma which faced the PELRB, and indeed which now faces this court, is how to read the two statutes together.

The PELRB resolved the problem in the following fashion:

> The Personnel Commission Law and the rules which are promulgated under it, comprise the "Merit System" for hiring, pay, classification and promotion in New Hampshire, as is reflected in RSA 98:18 and other provisions of the statute designed to separate classified state services from politics.
>
> . . . .
>
> The Board cannot find that the Legislature intended to repeal, alter or make bargainable any of the provisions of RSA 98 or the rules published by the Personnel Commission. Specific reference is made in RSA 273-A to the merit system which was law at the time and known to the Legislature when RSA 273-A was passed. *The parties are prohibited by law from bargaining over items specifically covered by that system.* (Emphasis added.)

The PELRB ruling went on to define the managerial policy exception as follows: "The Legislature did not wish to allow governmental direction to be bargained away; which means among other things *what* the government is to do, *how* it is to do it, and *who* is to

perform it (following the personnel commission rules). Such matters are not bargainable." (Emphasis in original.)

Turning to the specific contract proposals, the PELRB ruled that proposals relating to subcontracting out of work are nonnegotiable, that certain proposals relating to employee training and education are negotiable, but that proposals concerning leaves of absence, time off and State-established training programs are not negotiable. It also ruled that proposals concerning employee discipline and removal, classification, promotion, transfer, layoff, seniority, and wage and salary administration, other than "wages themselves," are not negotiable.

■ The SEA contends that the PELRB's broad interpretation of the managerial policy and merit system exceptions effects an unduly restrictive interpretation upon the intended scope of collective bargaining under RSA ch. 273-A. We agree with this contention only in a qualified sense. The PELRB is "vested . . . with primary authority to define the terms of [RSA ch. 273-A]." *State Employees' Ass'n v. Bd. of Trustees*, 118 N.H. 466, 467, 388 A.2d 203, 204 (1978); *N.H. Dep't of Revenue Admin. v. Public Employee Labor Relations Bd.*, 117 N.H. 976, 380 A.2d 1085 (1977). Overall statutory interpretation, on the other hand, is ultimately a matter of law within the province of this court. *See Kalloch v. Bd. of Trustees*, 116 N.H. 443, 362 A.2d 201 (1976); *Kinchla v. Baumner*, 114 N.H. 818, 330 A.2d 112 (1974).

■■ We cannot agree with the PELRB that in enacting RSA 273-A:3 III, the legislature intended to exempt from the State's bargaining obligation all matters covered by personnel commission rules. Even the SNC admits that certain commission rules deal with aspects of public employment that are indisputably proper subjects of bargaining and are in fact currently bargained with the consent of both the SNC and the SEA. These subjects include overtime, legal holidays, annual and sick leave, maternity leave, and other such matters. The merit system exception excludes only "matters regarding the policies and practice of any merit system;" it does not exclude everything that the personnel commission has passed upon. Nor does the other exception, the managerial policy exception embodied in RSA 273-A:1 XI, require such broad deference to the personnel rules; that exception excludes from negotiation "managerial policy within the exclusive prerogative of the public employer, or confided exclusively to the public employer by statute or regulations adopted pursuant to statutes." *Id.* The mere existence of a commission rule does

not ipso facto bring the subject of that rule within this provision. Only that part of the subject which deals with managerial policy within the sole prerogative of the employer, or managerial policy which by statute or regulation is confided to the sole prerogative of the employer is excluded from negotiation.

■ RSA ch. 273-A and RSA ch. 98 must be read together as a cohesive whole. *State v. Woodman*, 114 N.H. 497, 323 A.2d 921 (1974). When this is done it appears clear that the personnel commission's role has been modified, at least to some extent. The PELRB was correct in our view, however, in not extending the provisions of RSA ch. 273-A beyond that which clearly was intended. At stake in public collective bargaining is the continued operation of State government. Therefore, we hold that the PELRB properly gave a broad definition of "managerial policy within the exclusive prerogative of the public employer." RSA 273-A:1 XI. For that reason we do not adopt an "impact test"; fairness in collective bargaining in the public sector is adequately assured by the provisions of RSA ch. 273-A as we have interpreted them. Whatever the desirability of that test in the private sector, we consider it a matter more appropriately left to the legislature in dealing with employment relations of government.

■ In sum, we hold that the PELRB erred to the extent that it ruled that none "of the provisions of RSA 98 or the rules published by the Personnel Commission" are bargainable. Notwithstanding that error, we hold that the PELRB was correct in giving broad meaning to the term "managerial policy." We hold that the board's rulings on the specific proposals before it are supported under the principles of this decision. The PELRB should in the future decide as a matter of fact which contract proposals are proper subjects of negotiation. In doing so, however, we caution that body not to construe the merit system exception quite so broadly.

*Appeal dismissed.*