Public Employee Labor Relations Board
No. 79-401

## APPEAL OF STATE EMPLOYEES' ASSOCIATION OF NEW HAMPSHIRE, INC.
### (New Hampshire Public Employee Labor Relations Board)

October 27, 1980

*Cleveland, Waters & Bass,* of Concord (*Robert T. Clark* orally), for the plaintiff.

*Gregory H. Smith,* acting attorney general (*James E. Townsend,* attorney, orally), for the State.

BOIS, J. The issue presented in this appeal is whether the New Hampshire Public Employee Labor Relations Board (PELRB) erred in holding that the State Negotiating Committee (SNC) had not committed an unfair labor practice by refusing to negotiate a State Employees' Association (SEA) proposal pertaining to certain academic employees. At the hearing before the PELRB, the SEA claimed that the subject matter of its proposal constituted "wages" under RSA 273-A:1 XI, thereby requiring collective bargaining. The State, however, successfully asserted that the proposal involved salary administration and equalization of pay which come within the ambit of non-negotiable managerial discretion. We uphold the PELRB.

In 1978 the SEA and the SNC were negotiating the terms and conditions of a new State employee contract to take effect in July of 1979. During the negotiations the SEA offered a proposal which it claimed would equalize the salaries for faculty members of the vocational technical college and technical institute system to reflect "equal pay for equal work." *See Slayton v. Personnel Comm'n*, 117 N.H. 206, 371 A.2d 1159 (1977); RSA 98:13 XIII. The SNC refused to negotiate, citing the intrusion the proposed plan would have on the managerial discretion of the director of personnel and the personnel commission. The parties eventually came to terms on a State employee contract, which would increase the salaries for all State classified employees, including academic employees. The new agreement, which was included in the bill for the 1979 operating budget, however, did not include all of the terms of the SEA proposal. *See* 1979 N.H. Laws, ch. 434:35 II, III, IV & :42 II, III, IV.

Prior to legislative action on the State budget, the SEA submitted its proposal to a fact-finder under RSA 273-A:12 I (Supp. 1979). The fact-finder recommended that the SEA withdraw its proposal, the objective of which was similar to an SEA action pending before this court. *See State Employees' Ass'n v. Lang*, 119 N.H. 637, 406 A.2d 702 (1979). Rejecting the recommendation of the fact-finder, the SEA submitted that recommendation for approval or denial to the full membership of the SEA and the Governor and Executive Council. RSA 273-A:12 II. The full membership of the SEA thereupon accepted the recommendation of the fact-finder.

Prior to a decision on the findings of the fact-finder by the Governor and Executive Council, counsel from the attorney general's office met with SEA counsel to inform him that the personnel department was preparing a bill for submission to the

legislature to provide for salaries for academic employees higher than those included in their current labor grade. After the parties were unsuccessful in reaching a compromise, the SEA filed an unfair labor practice complaint with the PELRB, alleging that the SNC had refused to negotiate wages for State personnel and had evidenced an intent to circumvent the negotiation process by legislation. The PELRB held a hearing on the SEA complaint, and shortly thereafter the bill authored by the department of personnel was introduced in the New Hampshire Senate and adopted as an amendment to the State budget legislation. Uncertain of the effect that the pending legislation and the pending case before this court would have on the matter before it, the PELRB issued an order denying the SEA request for a finding of an unfair labor practice. The Governor, meanwhile, signed the State budget bill. Both the SNC and the SEA filed motions for a rehearing before the PELRB which the board granted. After a rehearing, the PELRB rescinded its earlier order and issued the order which led to this appeal, ruling that the SEA had attempted to negotiate the classification of certain academic employees, a subject within the non-negotiable managerial function of the State.

The SEA contends that its effort to include equalization of pay for a specific group of academic employees into the State budget constituted an attempt to negotiate "wages", which is a mandatory subject of collective bargaining under RSA 273-A:3 I. *See NLRB v. Wooster Division of Borg-Warner Corp.*, 356 U.S. 342 (1958). Basing its assertion on our decision in *Slayton v. Personnel Comm'n*, 117 N.H. 206, 371 A.2d 1159 (1977), the SEA argues that its proposal sought to implement "equal pay for equal work" for this subgroup of academic state employees. Although the *Slayton* case is factually similar to the case before us, we conclude that substantive distinctions exist between them. In *Slayton* a teacher at the Laconia State School had worked a nine-month academic year prior to beginning the same work on a twelve-month basis. The teacher sought implementation of equal pay for equal work from the director of personnel, who raised her wages to reflect a two-month increase under the mistaken impression that she had been working a ten-month academic year. In our holding in *Slayton* we remedied this discrepancy by awarding compensation to the plaintiff for three months to reflect the accurate state of the facts.

Although the SEA had chosen to characterize its attempts to collectively bargain as an effort to effectuate "equal pay for equal work" under the *Slayton* decision, the PELRB concluded that their

efforts to implement the same rate of pay for certain classes of employees in fact constituted an attempt to infringe upon the state employee classification system. Under RSA 273-A:3 III the State can establish a merit system which allows advancement for its employees. This power is consistent with the definition of "managerial policy within the exclusive prerogative of the public employer" as set forth in RSA 273-A:1 XI. The SEA essentially is not claiming unequal salaries here, but is seeking to abolish the tripartite classification system which the personnel department has established to determine compensation based on when the academic employee was hired and the length of the respective school year. The logical extension of this SEA attempt would be one pay scale for all academic employees regardless of when they began to work, thereby altering the state merit system as it relates to the designation of salaries. *See* RSA 98:3; *cf. Melton v. Personnel Comm'n*, 119 N.H. 272, 280, 401 A.2d 1060, 1065 (1979); *Jeannont v. N.H. Personnel Comm'n.*, 118 N.H. 597, 601, 392 A.2d 1193, 1195 (1978); *Wilson v. State Personnel Comm'n*, 118 N.H. 424, 426, 387 A.2d 1160, 1161 (1978). The PELRB held that such a result falls within the managerial prerogative of the public employer and, therefore, is not negotiable.

In *State Employees' Ass'n v. N.H. PELRB*, 118 N.H. 885, 397 A.2d 1035 (1978), this court examined the obligation of the State to bargain under the collective bargaining statute, RSA ch. 273-A. We recognized the dual policy considerations of the statute: to "foster harmonious and cooperative relations" between the State and its employees; and to protect " 'the public by encouraging the orderly and uninterrupted operation of government.' Laws of 1975, 490:1." *Id.* at 886, 397 A.2d at 1036. *See generally* R. T. Clark, Jr., *"The Scope of the Duty to Bargain in Public Employment"*, in LABOR RELATIONS LAW IN THE PUBLIC SECTOR, 92–95 (A. Knapp ed. 1977). We further noted that RSA 273-A:9 made "[c]ost items and terms and conditions of employment affecting State employees" mandatory subjects for negotiation. *State Employees' Ass'n v. N.H. PELRB, supra* at 886, 397 A.2d at 1036. When considering the "managerial policy" exception to the obligation to bargain under RSA 273-A:1 XI, we held that the PELRB properly gave broad definition to this exclusion. *Id.* at 890, 397 A.2d at 1038.

In *Fibreboard Paper Prods. Corp. v. NLRB*, 379 U.S. 203, 220 (1964), Justice Stewart, in a widely accepted concurring opinion, explained that the words used to delineate the scope of mandatory collective bargaining, namely "wages, hours, and other terms and

conditions of employment", National Labor Relations Act § 8(d), 29 U.S.C. § 158(d) (1976), are "words of limitation." *See* Clark, *supra* at 87.

In the case before us, the PELRB found that the SEA and the SNC had, in fact, negotiated "wages" during the bargaining process for the State employee contract which had included the general salary increase. The board further ruled that the SEA attempt to negotiate regarding the subgroup of academic faculty actually constituted a request to reclassify those employees under pre-existing personnel department classifications. *See Wilson v. State Personnel Comm'n,* 118 N.H. at 426, 387 A.2d at 1161. The PELRB concluded that the State had "fulfilled its obligations by negotiating the wages for these employees."

■ ■ We have often restated the proposition that the legislature has vested the PELRB with authority initially to define the terms of the collective bargaining statute and with the discretion to interpret "managerial policy within the exclusive prerogative of the public employer." *Keene State College Educ. Ass'n v. State,* 119 N.H. 1, 3, 396 A.2d 1099, 1101 (1979); RSA 273-A:1 XI; *see State Employees' Ass'n v. N.H. PELRB,* 118 N.H. at 889, 397 A.2d at 1038 (1978); *State Empl. Ass'n v. Board of Trustees,* 118 N.H. 466, 467, 388 A.2d 203, 204 (1978); *N.H. Dept. of Rev. Administration v. Public Emp. Lab. Rel. Bd.,* 117 N.H. 976, 977-78, 380 A.2d 1085, 1086 (1977). RSA 541:13 states that the appealing party has the burden to show, by a clear preponderance of the evidence, that the decision of the PELRB is unjust or unreasonable. *See Appeal of Berlin Bd. of Educ.,* 120 N.H. 226, 229 413 A.2d 312, 314 (1980); *In re Nashua Ass'n of School Principals,* 119 N.H. 90, 92, 398 A.2d 832, 834 (1979); *Keene State College Educ. Ass'n v. State, supra* at 3, 396 A.2d at 1101; *University System v. State,* 117 N.H. 96, 99, 369 A.2d 1139, 1140 (1977). Furthermore, in the absence of an error of law, we will not overturn a ruling of the PELRB unless we find that the board abused its discretion. *State Empl. Ass'n v. Board of Trustees, supra* at 467-68, 388 A.2d at 204; *see Appeal of Berlin Bd. of Educ., supra* at 229, 413 A.2d at 314.

■ We acknowledge that there are significant interests at stake for both parties. We further recognize that the complex factual setting from which this issue had arisen presented a difficult question to the PELRB. Our decision must reflect our judicial posture of upholding the PELRB except in cases of abuse of discretion. We must also give due consideration to the policy

concerns enunciated in the legislation which led to the enactment of RSA ch. 273-A. We conclude that in finding that the SNC had, in fact, negotiated "wages" with the SEA regarding the State employees contract, and in ruling that the SEA effort essentially constituted an attempt to reclassify rather than to negotiate wages, the PELRB did not abuse its discretion and appropriately reconciled the competing interests of the parties.

■ The plaintiff also contends that introduction of legislation regarding State academic employee salaries was an unfair labor practice because it constituted a unilateral attempt to institute change in a mandatory subject of bargaining. We find no merit in this argument. The legislature can enact statutory authorization for the payment of salaries without committing an unfair labor practice. *See* Summers, *Public Employee Bargaining: A Political Perspective*, 83 YALE L.J. 1156, 1193 (1974). Because we have upheld the PELRB determination that assertions of the SEA did not constitute attempts to negotiate a mandatory subject of collective bargaining, it follows that the legislation involved here was not a unilateral attempt to circumvent the collective bargaining process.

*Appeal dismissed.*

All concurred.