Public Employee Labor Relations Board
No. 96-162

APPEAL OF MERRIMACK COUNTY BOARD OF COMMISSIONERS

(New Hampshire Public Employee Labor Relations Board)

May 14, 1998

*George A. Stewart*, assistant county attorney, of Concord, by brief and orally, for the petitioner.

*Michael C. Reynolds*, general counsel, State Employees' Association of New Hampshire, Inc., S.E.I.U., AFL-CIO, CLC Local 1984, of Concord, by brief and orally, for the respondent.

HORTON, J. The petitioner, Merrimack County Board of Commissioners (county), appeals a decision of the New Hampshire Public Employee Labor Relations Board (PELRB). *See* RSA 273-A:14 (1987); RSA 541:6 (1997). The PELRB denied the county's claim that the respondent, the State Employees Association (SEA), committed an unfair labor practice by demanding arbitration of a non-arbitrable matter and ordered the parties to arbitration. We reverse.

The SEA is the exclusive representative of certain employees at the Merrimack County Department of Corrections. The county and the SEA negotiated numerous collective bargaining agreements (CBA) over the past decade; the present dispute involves the CBA effective April 1, 1994, through April 1, 1997. The previous CBAs contained a five-step wage schedule for annual wage increases within each labor grade. Each CBA consistently established the effective date for annual step increases to be the employee's anniversary date, *i.e.*: (1) the date of an employee's entrance or reentrance into county employment for employees hired after April 1, 1977; and (2) July 1 for all other employees. The CBA at issue added three new step levels to each labor grade but did not modify the existing provision establishing the anniversary date for each employee's annual increase.

Subsequently, the SEA demanded that all employees who had reached the maximum wage level prior to the CBA at issue receive an immediate step increase on July 1, 1994, rather than on their regular anniversary date. Essentially, the SEA demanded that the "maxed out" employees receive a "catch up" step increase so that they would receive a second step increase at the time the remaining employees received their first. The county refused on the basis that

the "maxed out" employees were only entitled to a step increase on their regular anniversary dates and were not entitled to an "early" step increase. The SEA demanded that the county submit the dispute to binding arbitration under Article XVIII of the CBA, which states:

> The purpose of this Article is to provide a mutually acceptable procedure for adjusting grievances arising from an alleged violation, misinterpretation or misapplication with respect to one or more unit employees, of any provision of this Agreement except those excluded expressly.

The county argued, *inter alia*, that the SEA's step increase demand was not based on a provision of the CBA, and thus was beyond the scope of Article XVIII. The SEA admitted that its claim was not based on a provision within the CBA, but contended that it was based on a "mistakenly excluded" provision that had been negotiated and agreed to by the parties. The SEA argued that the dispute was based on a "misinterpretation" of the CBA and was thus arbitrable under Article XVIII.

On May 19, 1995, the county filed a complaint with the PELRB claiming the SEA committed an unfair labor practice by demanding arbitration of a non-arbitrable matter. *See* RSA 273-A:5, II(f) (1987). The county relied upon the SEA's statement that its demand was not based on a provision within the CBA, but was instead based on a "mistakenly excluded" provision allegedly negotiated and agreed to by the county and the SEA. The PELRB found the wage term of the contract susceptible to an interpretation for the SEA and the dispute arbitrable and ordered the parties to arbitration. The PELRB apparently based its decision on language in the wage schedule, an appendix to the CBA, rather than on any text within the CBA itself. The county appeals.

On appeal, the county assigns several points of error to the PELRB's decision. Because we hold that contract reformation for an omitted CBA provision is not subject to binding arbitration under the CBA, we need not address the county's remaining arguments.

■ We will not overturn the PELRB's decision unless it is erroneous as a matter of law, unjust, or unreasonable. *See* RSA 541:13 (1997); *Appeal of Londonderry School District*, 142 N.H. 677, 680, 707 A.2d 137, 139 (1998). We presume that the PELRB's findings of fact are lawful and reasonable. *Appeal of Westmoreland School Bd.*, 132 N.H. 103, 105, 564 A.2d 419, 420 (1989). We consider four principles in determining whether a dispute is arbitrable:

(1) arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit; (2) unless the parties clearly state otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator; (3) a court should not rule on the merits of the parties['] underlying claims when deciding whether they agreed to arbitrate; and (4) under the "positive assurance" standard, when a CBA contains an arbitration clause, a presumption of arbitrability exists, and in the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.

*Id.*, 564 A.2d at 420-21 (quotations, citations, and brackets omitted).

■ Article XVIII, section 18.1 of the 1994 CBA requires the parties to arbitrate any grievance "arising from an alleged violation, misinterpretation or misapplication . . . of any provision of this Agreement except those excluded expressly." Thus, to be arbitrable, the parties' dispute must arise from the interpretation, application, or violation of an *existing* contract provision. *Cf. Brampton Woolen Co. v. Local Union*, 95 N.H. 255, 257, 61 A.2d 796, 797 (1948) (interpreting existing CBA provision regarding "wages" to include vacation pay). Arbitration cannot arise on the basis of an omitted term because an omitted term cannot be violated, misinterpreted, or misapplied.

■ After examining the CBA and the wage schedule, we find no language in the agreement that supports the PELRB's finding. As in previous CBAs, express language provides that each employee receives step increases on the employee's anniversary date. While the wage schedule indicates that it is "effective 7/01/94," wage schedules in previous CBAs also had effective dates of July 1 of the respective year that the CBA became effective. The effective date of July 1, in the current and former CBAs, is consistent with the objective of providing raises to employees with July 1 anniversary dates.

In addition, no language in the CBA indicates that employees obtain step increases at any time other than their anniversary dates, as defined in the CBA. The three new steps were intended to incorporate additional increases for employees who had reached the maximum wage step of existing labor grades. The one-time nature of a "catch-up" step increase would be a unique, substantial, and

material change to any prior agreement between the parties, requiring specific contract language. In the absence of language in the CBA indicating otherwise, employees at the maximum step receive annual increases on their respective anniversary dates, just as other employees do.

To achieve the SEA's desired result would require a new and explicit provision providing step increases at another date than is now specified in the CBA. While the SEA maintains that the parties negotiated and agreed to a "catch up" step increase on July 1, 1994, we can say with "positive assurance" that a dispute concerning the reformation of the CBA to include a term that was allegedly inadvertently omitted is not arbitrable under the arbitration clause. *Cf. West Coast Tel. Co. v. Local U. No. 77, Int. Bro. of Elec. Wkrs.*, 431 F.2d 1219, 1221 (9th Cir. 1970).

*Reversed.*

All concurred.