Public Employee Labor Relations Board
No. 97-738

APPEAL OF PITTSFIELD SCHOOL DISTRICT

(New Hampshire Public Employee Labor Relations Board)

December 28, 1999

*Jay C. Boynton*, of Andover, by brief and orally, for the petitioner.

*James F. Allmendinger*, of Concord, staff attorney, NEA-New Hampshire, by brief and orally, for the respondent, the Educational Association of Pittsfield, NEA-New Hampshire.

BROCK, C.J. The petitioner, Pittsfield School District (district), appeals a decision of the New Hampshire Public Employee Labor Relations Board (PELRB): (1) ruling that the district committed an unfair labor practice by unilaterally adopting changes in teacher evaluation procedures and by refusing to negotiate those changes; and (2) mandating that the district negotiate any future changes in teacher evaluation procedures. *See* RSA 273-A:14 (1999); RSA 541:6 (1997). We affirm in part and reverse in part.

The respondent, the Educational Association of Pittsfield, NEA-New Hampshire (EAP), is the exclusive bargaining representative for certified classroom teachers employed by the Pittsfield School District. The district is a public employer. *See* RSA 273-A:1, X (1999). The EAP and the district were parties to a collective bargaining agreement (CBA) in effect from September 1, 1995, to August 31, 1997. Article VIII of the CBA, entitled "Employee Evaluations," delineates ten procedures by which the performance

of public school teachers is to be evaluated. Article VIII requires, *inter alia*, that any observation of an EAP member's performance be conducted with that member's full knowledge. Teacher evaluation procedures were also governed by a handbook adopted by the district in 1981, which provided procedures and preprinted forms for conducting and completing teacher evaluations.

In 1996, the district unilaterally adopted a new teacher evaluation plan (1996 plan). The 1996 plan took effect at the beginning of the 1996-1997 academic year. The 1996 plan: (1) provides the minimum number of teacher evaluations; (2) mandates post-evaluation conferences between teacher and administration; (3) changes the name of a teacher assistance program from "Improvement Planner" to "Plan of Assistance"; and (4) mandates the development of "Performance Goals" by teachers and administrators.

The EAP asked the district to negotiate a new teacher evaluation plan. When the district refused, the EAP filed a complaint with the PELRB charging that the district committed an unfair labor practice by unilaterally adopting the 1996 plan and by refusing to negotiate its contents. *See* RSA 273-A:5, I(a), (e), (g) (1999). The district argued that the procedural changes to teacher evaluations effectuated by the 1996 plan constituted a managerial policy, and thus it was not required to negotiate the 1996 evaluation plan prior to its adoption. *See* RSA 273-A:1, XI (1999).

The PELRB agreed with the EAP and ordered the district to cease and desist implementation of the 1996 plan and to negotiate any future changes in teacher evaluations. *See* RSA 273-A:6, VI (1999). The PELRB specifically found that the provisions of the 1996 plan were not similar to those of either Article VIII or the 1981 handbook.

On appeal, the district argues that the PELRB erred in: (1) ruling that the teacher evaluation plan is a mandatory subject of negotiation; and (2) mandating that the district negotiate any future changes in teacher evaluation procedures. As petitioner, the district must show by a clear preponderance of the evidence that the PELRB decision is erroneous as a matter of law, unjust, or unreasonable. *See* RSA 541:13 (1997); *Appeal of Westmoreland School Bd.*, 132 N.H. 103, 105, 564 A.2d 419, 420 (1989). We presume that the findings of fact by the PELRB are both lawful and reasonable. *See* RSA 541:13; *Appeal of Merrimack County Bd. of Comm'rs*, 142 N.H. 768, 770, 709 A.2d 775, 777 (1998).

We first address whether the 1996 teacher evaluation plan is a mandatory subject of negotiation. The district argues that the 1996 plan falls within the definition of the managerial policy exception

and, therefore, is not a mandatory subject for negotiation. *See* RSA 273-A:1, XI. The EAP counters that the 1996 plan concerns evaluation procedures which primarily affect the terms and conditions of teachers' employment and thus must be negotiated.

RSA 273-A:1, XI incorporates the managerial policy exception to mandatory negotiation:

> "Terms and conditions of employment" means wages, hours and other conditions of employment other than managerial policy within the exclusive prerogative of the public employer, or confided exclusively to the public employer by statute or regulations adopted pursuant to statute. The phrase "managerial policy within the exclusive prerogative of the public employer" shall be construed to include but shall not be limited to the functions, programs and methods of the public employer, including the use of technology, the public employer's organizational structure, and the selection, direction and number of its personnel, so as to continue public control of governmental functions.

"RSA 273-A:1 XI provides that 'terms and conditions of employment,' meaning wages, hours, and 'other conditions of employment' which do not involve managerial policy, are negotiable." *Appeal of Watson*, 122 N.H. 664, 667, 448 A.2d 417, 419 (1982). "This is to be sharply contrasted with the 'managerial policy' exception which excludes from negotiation 'functions, programs and methods of the public employer, . . . the public employer's organizational structure, and the selection, direction and number of its personnel.'" *Id.*

In *Appeal of the State of New Hampshire*, 138 N.H. 716, 722, 647 A.2d 1302, 1306-07 (1994), we established a three-part test to determine whether negotiation of a proposal is mandatory, permissible, or prohibited, thereby determining the applicability of the managerial policy exception. *See Appeal of City of Concord*, 139 N.H. 277, 282, 651 A.2d 944, 948 (1994). In relevant part, the test states:

> First, to be negotiable, the subject matter of the proposed contract provision must not be reserved to the exclusive managerial authority of the public employer by the constitution, or by statute or statutorily adopted regulation. For instance, the mere existence of personnel rules does not require that the subject matter of the rules be excluded from negotiation, under the prohibition of step one, unless

the subject matter is otherwise reserved to the *sole prerogative* of the public employer by statute.

Second, the proposal must primarily affect the terms and conditions of employment, rather than matters of broad managerial policy. Matters of managerial policy include, at least, "the functions, programs and methods of the public employer, including the use of technology, the public employer's organizational structure, and the selection, direction and number of its personnel." Often, both the public employer and the employees will have significant interests affected by a proposal. Determining the primary effect of the proposal requires an evaluation of the strength and focus of the competing interests. For example, although a school district's decision about whether or not to offer extracurricular programs is part of broad managerial policy, staff wages, hours, and other specifics of staff obligations and remuneration primarily affect the terms and conditions of employment.

Third, if the proposal were incorporated into a negotiated agreement, neither the resulting contract provision nor the applicable grievance process may interfere with public control of governmental functions contrary to the provisions of RSA 273-A:1, XI.

*Appeal of State of N.H.*, 138 N.H. at 722, 647 A.2d at 1306-07 (citations omitted). We conclude that the managerial policy exception does not apply to the new teacher evaluation procedures at issue here, and they are not prohibited subjects of bargaining under the rule of *Appeal of the State of New Hampshire*.

The district argues that teacher evaluation procedures are reserved to it under a State education regulation, which states in pertinent part that each school board shall "[a]dopt policies necessary and desirable to control and effectuate the . . . evaluation . . . of teachers." N.H. ADMIN. RULES, Ed 303.01(a). The rule, however, does not specifically reserve to the district the power to establish teacher evaluation procedures. Rather, it requires the district to adopt evaluation "policies," and does not state that the district has the exclusive power to do so as a management prerogative. *See Appeal of State of N.H.*, 138 N.H. at 723, 647 A.2d at 1307.

■ The district further argues that RSA 273-A:1, XI excepts the 1996 plan as a public employer's method of "selection" and "direction" of its personnel. RSA 273-A:1, XI. The statute does not

expressly except evaluations. Moreover, the 1996 plan does not restrict the district's ability to "select" employees as it does not provide standards by which the district may hire teachers. Additionally, the 1996 plan does not hinder the district's "direction" of employees because it only provides procedures for teacher evaluations, not standards by which the teacher evaluations will be reviewed or any changes in policy which the district may need to institute. Therefore, we decline to extend the exception for the selection and direction of employees to incorporate the teacher evaluation procedures devised under the 1996 plan. Accordingly, we reject the district's argument that the 1996 plan is a prohibited subject of bargaining.

■ We need not decide whether the teacher evaluation procedures proposed here are mandatory matters of bargaining. Once parties to a CBA have chosen to bargain over matters not otherwise prohibited from negotiation, the parties must abide by the agreement entered into during the term of the CBA. *See Appeal of Town of Pelham*, 124 N.H. 131, 137-38, 469 A.2d 1295, 1299 (1983). "[L]anguage specifically negotiated and agreed upon by public employer and employee is binding upon both." *Id.* at 138, 469 A.2d at 1299; *see also Appeal of Berlin Board of Education*, 120 N.H. 226, 230, 413 A.2d 312, 314 (1980). In Article VIII of the CBA, the parties agreed to ten procedures by which the performance of teachers is to be evaluated. The CBA was in effect at the time the petitioner unilaterally changed these procedures. The record supports the specific finding by the PELRB that the 1996 plan conflicted with Article VIII. As a subject that has been bargained by the parties, the teacher evaluation procedures in Article VIII must stand during the term of the contract and any extensions thereof, unless modified by agreement of the parties. Accordingly, we conclude that the PELRB's cease and desist order was not erroneous as a matter of law, unreasonable, or unjust. *See Appeal of State of N.H.*, 138 N.H. at 719, 647 A.2d at 1305.

■ We conclude, however, that the PELRB erred in ordering the parties to negotiate any future changes in teacher evaluation procedures. While the procedural changes adopted in the 1996 plan required negotiation, under the circumstances of this case, we cannot say that that conclusion necessarily extends to all future changes in teacher evaluations. This portion of the PELRB decision is therefore reversed.

In light of our rulings above, we need not address the parties' remaining arguments.

*Affirmed in part; reversed in part.*

All concurred.