Public Employee Labor Relations Board
No. 2005-490

## APPEAL OF WHITE MOUNTAIN REGIONAL SCHOOL DISTRICT
### (New Hampshire Public Employee Labor Relations Board)

Argued: May 17, 2006
Opinion Issued: August 29, 2006

*Soule, Leslie, Kidder, Sayward & Loughman,* of Salem (*Michael S. Elwell* and *Jill A. Desrochers* on the brief, and *Mr. Elwell* orally), for the appellant.

*James F. Allmendinger*, of Concord, staff attorney, NEA-New Hampshire, by brief and orally, for the appellee, White Mountain Regional Education Association, NEA-New Hampshire.

HICKS, J. The appellant, White Mountain Regional School District (district), appeals a ruling of the New Hampshire Public Employee Labor Relations Board (PELRB) that it committed an unfair labor practice under RSA 273-A:5 (1999). The PELRB ruled that the district breached its collective bargaining agreement with the appellee, White Mountain Regional Education Association (association), when it issued letters of renewal with reservations to several of its teachers and required them to develop improvement plans for the upcoming school year. We affirm.

The record supports the following facts. The association is the exclusive representative of teachers employed by the district. The association and the district were parties to a collective bargaining agreement (CBA) in effect from July 1, 2002, to June 30, 2004. In April 2004, several tenured teachers employed by the district were given letters of renewal with reservations by the superintendent of schools. These letters informed the teachers that they were renominated for employment for the upcoming school year, but with reservations about their performance. The letters further stated that the teachers were required to prepare improvement plans before the end of the 2003-2004 school year.

The association filed an unfair labor practice complaint with the PELRB, alleging that the district unilaterally changed the procedures outlined in the CBA concerning teacher evaluation and performance reviews. The association relied upon article XVI of the CBA, entitled "Employee Evaluation," which details the procedures for evaluating teacher performance and providing feedback. It provides that tenured teachers are to be observed at least once per year, with discretion to the administration to conduct additional visits. A written evaluation must be prepared and placed in the teacher's file as a result of the observation, and a copy must be provided to the teacher.

The district maintained that its actions were consistent with the terms of the CBA, the past policies of the district, and RSA 189:14-a, III (Supp. 2005), which requires, among other things, notice to teachers that "unsatisfactory performance may lead to nonrenomination." The PELRB disagreed, ruling that the district breached the parties' CBA by using new procedures to communicate teacher deficiencies. It ordered the district to remove all evidence of the letters and improvement plans from the teachers' files. The district redacted certain portions of the teachers' files in accordance with the PELRB order and filed this appeal.

On appeal, the district argues that: (1) the PELRB's decision is contrary to RSA 189:14-a; (2) the CBA impliedly permits it to issue such letters and to require improvement plans; and (3) its actions constituted "managerial policy within the exclusive prerogative of the public employer" under RSA 273-A:1, XI (Supp. 2005).

■ Our review standard is governed by RSA 541:13 (1997). The PELRB's findings of fact are deemed *prima facie* lawful and reasonable, and its decision will be set aside only for errors of law or if it is shown to be unjust or unreasonable by a clear preponderance of the evidence. *Appeal of State of N.H.*, 138 N.H. 716, 719 (1994).

Following submission of the briefs but prior to oral argument, the association moved to dismiss this case as moot due to the expiration of the old agreement. Specifically, the association asserted that the case is moot because the teachers affected by the actions of the district were renewed and are under a new CBA that specifically addresses improvement plans. The new CBA, however, does not resolve whether the letters of renewal with reservations and improvement plans must remain redacted from the teachers' files. Accordingly, we deny the appellee's motion and address the merits of the appeal.

The district first argues that the PELRB's decision is contrary to RSA 189:14-a, III because this statute obligated the district to issue renewals with reservations in order to provide notice to the teachers that they may not be renewed. We disagree.

RSA 189:14-a, III became effective on August 29, 2003, and provides that:

> In cases of nonrenomination because of unsatisfactory performance, the superintendent of the local school district shall demonstrate, at the school board hearing, by a preponderance of the evidence, that the teacher had received written notice that the teacher's unsatisfactory performance may lead to nonrenomination, that the teacher had a reasonable opportunity to correct such unsatisfactory performance, and that the teacher had failed to correct such unsatisfactory performance.

RSA 189:14-a. The district asserts that this statute applied to the CBA on August 29, 2003, and therefore the district was required to take the action it did in order to comply with the terms of the statute in anticipation of the eventual nonrenomination of the teachers. The association counters that the provisions of this statute do not apply because of RSA 273-A:4 (Supp. 2005), which addresses arbitration and other binding resolution provisions under grievance procedures adopted under a collective bargaining agreement.

RSA 273-A:4 provides that:

> Every agreement negotiated under the terms of this chapter shall be reduced to writing and shall contain workable grievance procedures. No grievance resulting from the failure of a teacher to be renewed pursuant to RSA 189:14-a shall be subject to arbitration or any other binding resolution, except as provided by RSA 189:14-a and RSA 189:14-b. Any such provision in force as of the effective date of this section shall be null and void upon the expiration date of that collective bargaining agreement.

RSA 273-A:4. The "effective date of this section" was August 29, 2003. *See* Laws 2003, 204:5. The association asserts that the last sentence of this statute precluded application of RSA 189:14-a until the CBA expired on June 30, 2004.

While RSA 189:14-a is not directly applicable to this case because the teachers were all renominated, we recognize the district's concern that were the teachers not renominated for the following school year, the renewals with reservations policy would be evaluated to determine if it complied with the requirements of the statute. However, we hold that the notice provisions of RSA 189:14-a did not apply to the parties' CBA, which was already in existence at the time the notice provisions became effective. This dispute arose in April 2004, while the 2002-2004 CBA was in effect. An amendment to an existing law that affects existing contract rights is presumed to operate prospectively unless the language of the amendment or surrounding circumstances express a contrary legislative intent. *Hayes v. LeBlanc*, 114 N.H. 141, 144 (1974). We find no such language or circumstances here indicating that RSA 189:14-a was intended to affect existing contract rights. Indeed, the companion amendment to RSA 273-A:4 demonstrates the legislature's intent *not* to affect existing contract rights—the amendment specifically provides that its prohibition of arbitration or other binding resolutions does not apply to existing CBAs prior to their expiration dates. Therefore, we conclude that the language in RSA 189:14-a regarding procedures for notifying teachers of unsatisfactory performance did not apply to the district until the expiration of the CBA in June 2004. Accordingly, the district was under no obligation to comply with its provisions.

Next, the district argues that the PELRB's decision was contrary to the parties' CBA because letters of renewal with reservations and improvement plans are impliedly permitted by its provisions. Article XVI of the CBA requires tenured teachers to be observed at least once per year, allows multiple observations at the administration's discretion and

requires a written evaluation document to be prepared within ten days following such observations. The district contends that because this provision does not expressly preclude "the use of improvement plans and notices of reservations," it is free to utilize such measures. The PELRB disagreed, ruling that: "[W]e do not see a negotiated right flowing to the District to unilaterally abandon the multiple observation device and instead issuing a conditional renewal and, in addition, adding the requirement of participation in an undefined improvement plan that is not allowed under the terms of the CBA." We agree with the PELRB.

The terms of the CBA are clear regarding the procedures to be used when evaluating teachers and communicating teacher deficiencies. When the district issued letters of renewal with reservations and required improvement plans, it failed to follow the procedures of the CBA, which already provided procedures for teacher recommendations and improvement.

 Once parties to a CBA have chosen to bargain over matters not otherwise prohibited from negotiation, the parties must abide by the agreement entered into during the term of the CBA. *Appeal of Pittsfield School Dist.*, 144 N.H. 536, 540 (1999). In *Pittsfield*, we held that the Pittsfield School District was bound to follow the ten procedures laid out in the CBA regarding teacher evaluations and could not unilaterally adopt and enforce a new plan. *Id.* We reach the same conclusion here because the record supports the PELRB's finding that the terms of the CBA did not reserve to the district the right to implement different procedures for addressing teacher performance and evaluations. By doing so, the district failed to follow the express provisions of the CBA.

 Similarly, the savings clause of the CBA cannot be used by the district to support its actions. The savings clause provides that school board policies in use as of the effective date of the CBA are applicable so long as the policies are not restricted by provisions of the CBA. The record supports the PELRB's ruling that the savings clause does not apply because the CBA provides for the procedures to be followed when addressing teacher evaluations and performance reviews. Letters of renewal with reservations issued directly by the Superintendent without any warning or feedback from the teachers are contrary to the evaluation and recommendation procedures identified in the CBA. Accordingly, we reject the district's argument that its conduct can be justified by past policies.

Finally, the district asserts that the letters of renewal with reservations and required improvement plans fall within the managerial policy exception defined in RSA 273-A:1, XI, thereby permitting the district to

unilaterally implement these procedures without negotiation. The association counters that teacher evaluation procedures affect the terms and conditions of employment, which is a mandatory subject of bargaining.

RSA 273-A:1, XI exempts managerial policy from mandatory negotiation. The statute provides:

> "Terms and conditions of employment" means wages, hours and other conditions of employment other than managerial policy within the exclusive prerogative of the public employer, or confided exclusively to the public employer by statute or regulations adopted pursuant to statute. The phrase "managerial policy within the exclusive prerogative of the public employer" shall be construed to include but shall not be limited to the functions, programs and methods of the public employer, including the use of technology, the public employer's organizational structure, and the selection, direction and number of its personnel, so as to continue public control of governmental functions.

RSA 273-A:1, XI. In *Appeal of State of N.H.*, we clarified the managerial policy exception and established a three-part test to determine whether negotiation of a proposal is mandatory, permissible or prohibited. *Appeal of State of N.H.*, 138 N.H. at 722. In order for a proposal to be a prohibited subject of bargaining, and therefore fall under the managerial policy exception, the subject matter of the proposal must be reserved to the exclusive managerial authority of the public employer by the constitution, or by statute or statutorily adopted regulation. *Id.*

██ The PELRB ruled, without discussion, that the conduct of the district does not fall under the managerial policy exception. We agree. RSA 273-A:1, XI does not expressly except from bargaining teacher evaluation and performance review procedures. *See Pittsfield*, 144 N.H. at 539-40. The renewals with reservations and required improvement plans do not involve procedures for hiring teachers or the standards by which teacher improvement will be assessed and therefore do not affect matters of managerial policy. *Id.* at 540. Accordingly, we reject the district's argument that its actions are within the "exclusive prerogative of the public employer" affecting the "selection" and "direction" of its personnel. RSA 273-A:1, XI.

The district further argues that even if its actions are not considered managerial policy, the procedures at issue are not mandatory subjects of bargaining and that since the CBA is silent on the matter, the district is permitted to implement them. The association counters that the

procedures involve "terms and conditions of employment" which are mandatory subjects of bargaining that cannot be unilaterally implemented without negotiation. *Appeal of State of N.H.*, 138 N.H. at 722.

On the record before us, we decline to decide whether the procedures at issue in this case are "terms and conditions of employment." As we stated above, the CBA expressly provides for teacher evaluation and performance review procedures. By utilizing new procedures in this area, the district breached the specific provisions of the CBA. Because the procedures at issue are not prohibited subjects of bargaining under the managerial policy exception, and the parties chose to negotiate in this area, they are bound by the terms of the CBA. *Pittsfield*, 144 N.H. at 540. Thus, the PELRB correctly applied applicable precedent. *See id.*; *see also Appeal of State of N.H.*, 138 N.H. at 722.

Accordingly, we uphold the PELRB's ruling that the district breached the parties' CBA and that the April 2004 letters of renewal with reservations and improvement plans must be removed from the teachers' files.

*Affirmed.*

BRODERICK, C.J., and DALIANIS and GALWAY, JJ., concurred.